# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## AT KNOXVILLE

| | |
|---|---|
| **CHOICE SPINE LLC.,** | **CASE NO.** _____ |
| **Plaintiff,** | |
| **v.** | **COMPLAINT** |
| **ROGER P. JACKSON, M.D.,** **THOMAS GEMMELL, IQRA IQBAL,** **AND POLSINELLI, PC,** | **JURY TRIAL DEMANDED** |
| **Defendants.** | |

7838926.3

## NATURE OF THE ACTION

1. This is an action brought by Plaintiff Choice Spine, LLC ("Choice Spine") for declaratory relief arising under the patent laws of the United States, including declarations of non-infringement, invalidity, and unenforceability due to patent misuse, and for violation of the Tennessee Bad Faith Assertions of Patent Infringement Act; (TN Code § 29-10-102 *et seq*.) (hereinafter the "BFAPIA").

2. This case arises out of the bad faith assertions of patent infringement by defendants Thomas Gemmell ("Gemmell"), Iqra Iqbal ("Iqbal"), Polsinelli PC ("Polsinelli") (collectively, "Polsinelli Defendants"), and Dr. Roger Jackson ("Jackson"), (collectively with the Polsinelli Defendants, "Defendants"), to extract and extort an unsupported and unreasonable license from Choice Spine. Defendants allege infringement of fourteen U.S. Patents: (1) U.S. Patent No. 6,726,689 (the "'689 Patent") **Exhibit 1**; (2) U.S. Patent No. 9,456,853 (the "'853 Patent") **Exhibit 2**; (3) U.S. Patent No. 9,808,292 (the "'292 Patent") **Exhibit 3**; (4) U.S. Patent No. 9,953,006 (the "'006 Patent") **Exhibit 4**; (5) U.S. Patent No. 9,999,452 (the "'452 Patent") **Exhibit 5**; (6) U.S. Patent No. 10,039,577 (the "'577 Patent") **Exhibit 6**; (7) U.S. Patent No. 10,245,078 (the "'078 Patent") **Exhibit 7**; (8) U.S. Patent No. 11,129,646 (the "'646 Patent") **Exhibit 8**; (9) U.S. Patent No. 11,399,873 (the "'873 Patent") **Exhibit 9;** (10) U.S. Patent No. 11,419,638 (the "'638 Patent") **Exhibit 10**; (11) U.S. Patent No. 11,464,548 (the "'548 Patent") **Exhibit 11**; (12) U.S. Patent No. 11,849,977 (the "'977 Patent") **Exhibit 12**; (13) U.S. Patent No. 11,925,392 (the "'392 Patent") **Exhibit 13**; (14) U.S. Patent No. 11,931,080 (the "'080 Patent") **Exhibit 14** (collectively, the "Asserted Patents").

3. Beginning on July 14, 2022, and over the course of several letters, email correspondences, and meetings thereafter, Defendants have repeated their unsupported and

meritless accusation that Choice Spine's products infringe various claims of the fourteen (14) Asserted Patents, and have demanded that Choice Spine enter into a license agreement and pay a licensing fee or face litigation.

4. Despite nearly four years of requests by Choice Spine to seek a meeting with Jackson and/or fulsome claim charts containing the necessary evidence to support Defendants' allegations, Defendants have failed to provide adequate information describing that alleged infringement with sufficient detail for each of the Asserted Patents and each of the accused Choice Spine products.

5. As explained in greater detail below, Choice Spine does not infringe any valid or enforceable claim of any of the Asserted Patents and the Asserted Patents are unenforceable due to Defendants' patent misuse.

6. Defendants' objectively baseless allegations of infringement against a Tennessee company are exactly the type of bad faith assertions that the Tennessee Frivolous or Bad Faith Assertions of Patent Infringement Act was designed to prevent. Defendants are all in violation of the BFAPIA.

7. Therefore, Choice Spine requests relief as follows: (a) a declaratory judgment that Choice Spine's products do not infringe the Asserted Patents because they do not meet each and every limitation of any asserted claim; (b) that the Asserted Patents be found invalid pursuant to 35 U.S.C. §§ 102, 103, and/or 112, and (c) a declaratory judgment that the Asserted Patents are unenforceable due to Defendants' patent misuse; and (d) the entry of appropriate injunctive relief and the recovery of an award of actual damages and punitive damages resulting from Defendants' unlawful and abusive conduct in violation of the BFAPIA and other applicable law.

## THE PARTIES

8.      Plaintiff Choice Spine is a limited liability company organized and existing under the laws of the state of Delaware, with its principal place of business in this District at 400 Erin Dr., Knoxville, TN 37919.

9.      Choice Spine is a spinal implant company that designs, develops, manufactures, and distributes medical device products that provide comprehensive medical solutions to improve and enhance quality of life for patients around the world.

10.      On information and belief, defendant Dr. Roger Jackson is an individual residing at 4706 W 86th Street, Prairie Village, Kansas 66207. Jackson is the sole assignee of the Asserted Patents.

11.      On information and belief, defendant Polsinelli PC is a Professional Corporation organized and existing under the laws of the state of Missouri, with its principal place of business at 900 West 48th Place, Suite 900, Kansas City, MO 64112.

12.      On information and belief, Defendant Polsinelli PC is a large law firm employing over one thousand (1,000) attorneys across twenty-three (23) offices with a substantial geographic reach.

13.      On information and belief, Defendant Thomas L. Gemmell is an attorney licensed and residing in Illinois and shareholder with Polsinelli overseeing Iqbal.

14.      On information and belief, Defendant Iqra Iqbal is an attorney licensed and residing in California, and an associate with Polsinelli working under the direction of Gemmell.

15.      Defendant Jackson conspired with the Polsinelli Defendants to engage in the conduct described here, including abusive conduct under the BFAPIA and in bad faith accused Choice Spine of infringing the Asserted Patents.

## JURISDICTIONAL STATEMENT

16. This action arises under the Declaratory Judgment Act, 28 U.S.C. § 2201, and under the patent laws of the United States, 35 U.S.C. §§ 1–390.

17. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1338(a) and 2201(a).

18. Because the amount in controversy exceeds $75,000, and because Choice Spine, Jackson, Iqbal, Gemmell, and Polsinelli are all diverse parties, the Court also has diversity jurisdiction pursuant to 28 U.S.C. § 1332.

19. The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over all other claims asserted or that may be asserted that are so related to claims within the original jurisdiction of this action that they form part of the same case or controversy under Article III of the United States Constitution, including over Choice Spine's claim under the BFAPIA (TN Code § 29-10-102 *et seq.*) because, as set forth below, the BFAPIA claim is related to the claim(s) over which the Court has original and subject matter jurisdiction.

20. This Court has personal jurisdiction over Defendants because they knowingly directed their bad faith infringement claims and demands into this District and specifically to Choice Spine's address in Knoxville, TN as evidenced by the Defendants' unlawful attempt to extract a royalty from Choice Spine. By seeking out and demanding a license from Choice Spine, an entity known to exist under the laws of and operate in Tennessee and in this District, Defendants subjected themselves to personal jurisdiction in this District.

21. Defendants' initial communication with Choice Spine, dated July 14, 2022 letter (the "Demand Letter" attached hereto as **Exhibit 15**) was addressed and delivered to Choice Spine's Knoxville Tennessee address which constitutes a separate act sufficient to warrant

personal jurisdiction over Defendants. In that initial Demand Letter, Defendants demanded "a broad licensing arrangement to open the way for ChoiceSpine to continue to make and sell, as well as to further develop, its products." Other letters that followed threatened litigation against Choice Spine as noted in more detail below.

22. The Court has specific personal jurisdiction over Defendants because the causes of action herein arise out of and relate to Defendants' contact with the state and this District, namely sending the Demand Letter to Choice Spine at its Tennessee address.

23. Choice Spine's products that are immediately threatened with patent infringement were developed, in part, in Tennessee, and many of Choice Spine's customers are also based in Tennessee. Choice Spine's corporate headquarters are located in Knoxville Tennessee, and Choice Spine employs over forty (40) total employees and other individuals in the state of Tennessee.

24. Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c), because a substantial part of the events giving rise to Choice Spine's claims occurred in this District, and because the Defendants subjected themselves to personal jurisdiction by sending bad faith assertions of infringement into this District.

## BACKGROUND

### *CHOICE SPINE AND ITS SPINAL SOLUTIONS*

25. Choice Spine is a leading manufacturer of spinal implants, instruments and biologics, and offers an extensive array of innovative, surgeon-focused systems designed with the best clinical outcomes in mind. Choice Spine's portfolio of spinal hardware covers a number of key areas including thoracolumbar, cervical, interbody fusion and minimally invasive surgery for healthcare organizations.

26. Choice Spine owns a substantial portfolio of intellectual property, including over forty (40) United States and foreign patents and patent applications, numerous trademarks, trade

secrets, and other proprietary rights (collectively, "Choice Spine IP").

27. The Choice Spine IP reflects significant investment in research, development, engineering, and commercialization efforts, and Choice Spine actively protects its intellectual property rights.

28. At the same time, Choice Spine respects the valid and enforceable intellectual property rights of others, does not condone infringement, and conducts its business with the intent to avoid infringing the valid intellectual property rights of third parties in compliance with applicable intellectual property laws.

29. Choice Spine's current posterior fixation product lineup at issue includes the following products designed for a variety of applications, including those alleged to infringe the Asserted Patents: (1) Lancer; (2) Thunderbolt MIS; (3) Thunderbolt EXTAB; (4) Blackbird; and (5) Proliant. Representative examples of each are shown below:



*Lancer:*

*Thunderbolt MIS:*



***Thunderbolt EXTAB:***

***Blackbird:***

***Proliant:***

30.     While Choice Spine has made improvements to posterior fixation components, vertebral and pedicle screw fixation technology itself is not new, having been in use to treat spinal conditions since at least the 1940s. At this point, the technology is well developed, with hundreds of variations currently available in the marketplace.

### DEFENDANTS' JOINT INFRINGEMENT EXTORTION CAMPAIGN

31.     Jackson does not manufacture or commercialize any product or service that is covered by the Asserted Patents. Instead, Jackson's business model is predominantly directed to monetizing his patents through licensing.

32.     Jackson does not currently practice medicine and no longer holds a medical License

in Missouri, his state of residence.

33. Jackson is the named inventor and assignee of over three hundred patents and patent applications directed to posterior spinal fixation systems and related orthopedic technologies (the "Jackson Patents").

34. The Polsinelli Defendants in various capacities represent Jackson in connection with the filing, prosecuting, licensing, and enforcing, and defending in Inter-Partes Review ("IPR") proceedings of (and are also listed as attorneys of record with the United States Patent and Trademark Office for) the Asserted Patents and all other Jackson Patents, and have acted and continue to act on Jackson's behalf in connection with the assertion of those patents against third parties.

35. Upon information and belief, Jackson has conspired with the Polsinelli Defendants to repeatedly assert bad-faith patent litigation claims for financial gain.

36. Jackson has initiated at least three separate lawsuits against other entities engaged in the sale and manufactures of posterior fixation devices: (1) *Jackson v. Highridge Medical LLC,* 1:22-cv-00891 (D. Delaware 2022); (2) *Jackson v. Seaspine Holdings Corporation,* 1:20-cv-01784 (D. Delaware 2020); (3) *Jackson, M.D. v. NuVasive, Inc.,* 1:21-cv-00053 (D. Delaware 2021) ("Jackson Actions").

37. Upon information and belief, the Jackson Actions form part of a broader pattern in which Jackson and the Polsinelli Defendants target manufacturers and sellers of posterior fixation devices with allegations of infringement of various Jackson Patents in order to extract licensing payments.

38. The Polsinelli Defendants have participated in bad faith assertions of patent infringement against Choice Spine and other companies in addition to the Jackson Actions, and

have also been involved in prosecuting or assisting with the prosecution of the Jackson Patents and related patent applications before the United States Patent and Trademark Office, which makes them both culpable under the BFAPIA and material witnesses to Choice Spine's claims raised herein.

39. Upon information and belief, no meaningful prosecution bar or similar ethical screen has been implemented to separate the Polsinelli Defendants involved in patent prosecution of Jackson Patents from those engaged in enforcement and licensing activities relating to those patents.

40. In furtherance of this pattern, Defendants have repeatedly sent demand letters and other communications to Choice Spine and other third parties asserting infringement of the Asserted Patents and other Jackson Patents, demanding recipients to enter into a royalty-bearing license rather than providing substantive explanations of the alleged infringement.

41. These communications frequently reference the Jackson Patent "portfolio" and demand recipients secure a license covering a multitude of patents, including patents that have expired or that Defendants have not meaningfully analyzed with respect to any accused products.

42. Upon information and belief, Defendants employ substantially similar claim charts and infringement allegations when asserting the Asserted Patents and other Jackson Patents against multiple companies, regardless of the specific design or functionality of the accused products or implication of prior art that anticipates or makes obvious the Jackson Patents.

43. Rather than providing any detailed factual analyses of the alleged infringement, Defendants' claim charts largely consist of reproductions of patent claim language paired with images taken from Choice Spine marketing materials or Choice Spine patents without identifying where all claim limitations cover the accused products.

44. Defendants have sent claim charts asserting infringement of at least one patent whose claims have been entirely disclaimed or cancelled as a result of Inter-Partes Review ("IPR") proceedings and did not appeal, further evidencing Defendants' pattern of making baseless assertions of patent infringement lacking any reasonable basis in fact or law, and without the required analysis of the patent's validity or applicability, in direct violation of TN Code § 29-10-102(a)(3)(B).

45. Upon information and belief, the purpose of these communications is not to resolve legitimate disputes regarding patent infringement, but instead to pressure recipients into paying baseless licensing fees in order to avoid the cost and disruption of litigation.

46. Each of the Defendants have acted in concert in carrying out their illegal campaign by transmitting bad faith infringement allegations with incoherent claim charts to convey unreasonable licensing demands against Choice Spine and other companies in the posterior fixation industry. These communications are transmitted on Polsinelli letterhead and in the name of the firm and its attorneys, invoking the authority and credibility of the law firm to amplify the threat of litigation and to pressure recipients to agree to Defendants' bad faith licensing demands.

47. Publicly available data further demonstrates that Jackson's patent monetization efforts have been financially lucrative. According to the Centers for Medicare & Medicaid Services' Open Payments ("CMMSOP") database, Dr. Roger Jackson has extracted substantial payments from medical device manufacturers in connection with spinal device technologies. For example, the CMMSOP database reports that Jackson received approximately **$60,000,000** in royalty or license fees from nine (9) distinct posterior fixation companies since 2018. These publicly reported royalty payments illustrate the significant financial compensation Jackson has obtained through monetization of his Jackson Patents despite not actually commercializing or

practicing the claimed inventions in the marketplace himself.

*DEFENDANTS SEND A DEMAND LETTER*

48. Defendants first contacted Choice Spine via letter dated July 14, 2022, attached hereto as **Exhibit 15** (hereinafter the "Demand Letter"). The Demand Letter did not include any specific infringement allegations but broadly asserted that "ChoiceSpine's THUNDERBOLT™ minimally invasive pedicle screw system and LANCER™ open pedicle screw system products may infringe one or more claims of certain of [Jackson's] patents."

49. The Demand Letter also included a proposal for a "broad licensing arrangement to open the way for ChoiceSpine to continue to make and sell, as well as to further develop, its products," which included proposed royalty rates for fifteen (15) different categories of technologies.

50. The Demand Letter further identified the "Jackson IP Portfolio" which was purported to include "200+ Patents for Bone Anchor Implants and Modular Universal Shank Head Spinal Fixation Systems."  However, the list of patents comprising the "Jackson IP Portfolio" was not provided with the Demand Letter.

51. The BFAPIA delineates information that should be included in a proper patent licensing demand letter.

52. Defendants' Demand Letter did not include any of the critical information required by § 29-10-102 of the BFAPIA. Specifically, neither contained "[t]he factual allegations concerning the specific areas in which the intended recipient or affiliated person's products, services, or technology infringed the patent or are covered by the claims in the patent" as required by § 29-10-102(a)(3)(D)(iii) of the BFAPIA.

53. Collectively, the Demand Letter failed to identify any specific patent, claim, or

specific element of Choice Spine's products, and instead relied on generalized and speculative assertions of potential infringement. Despite the lack of detail, Defendants demanded that Choice Spine enter into a broad licensing arrangement covering a large and undefined portfolio of patents, thereby placing Choice Spine in the untenable position of trying to assess and respond to unparticularized allegations.

54. The Demand Letter was addressed to Steve Ainsworth, "Executive Vice President of Strategy and Technology" at 400 Erin Dr., Knoxville, TN 37919. *See* **Exhibit 15.**

55. Accordingly, when Defendants sent the Demand Letter, Defendants knew that Choice Spine was located in Tennessee.

56. The Demand Letter was signed by Defendant Gemmell and printed on Defendant Polsinelli's letterhead. *Id.*

### *DEFENDANTS' SUPPLEMENTAL UNSUPPORTED ALLEGATIONS*

57. On February 28, 2023, approximately seven (7) months after the Demand Letter, Defendants sent a cease and desist letter to Choice Spine in Knoxville, TN. With this cease and desist letter, Defendants alleged that Choice Spine's Thunderbolt and Lancer product lines "may infringe one or more claims of Dr. Jackson's patents," including "claim 31 of U.S. Patent No. 11,464,548; claim 1 of U.S. Patent No. 10,245,078; claim 1 of U.S. Patent No. 9,999,452; claim 1 of U.S. Patent No. 9,808,292; claim 1 of U.S. Patent No. 9,456,853; and, when active, claim 39 of U.S. Patent No. 6,726,689." *See* **Exhibit 16.**

58. Defendants did not include any claim charts or analysis with the February 28, 2023 correspondence. Instead, Defendants simply stated "Dr. Jackson has assumed that you have shared our correspondence within ChoiceSpine, and likewise see what we see" with respect to Choice Spine's alleged infringement. *Id*. Defendants likewise failed to explain how any identified claim allegedly reads on any accused product of Choice Spine or identify any specific product features

purportedly satisfying claim limitations.

59.     Rather than provide any meaningful infringement analysis, Defendants attached Dr. Jackson's standard license agreement, **Exhibit 17**, "proposed in [Defendants'] July 14 letter to resolve this matter and allow ChoiceSpine to further develop its product offerings." *See* **Exhibit 16**. Defendants thus again sought to extract a license without first substantiating their allegations of infringement.

60.     Defendants' February 28, 2023 letter concluded with a direct threat of litigation, stating "Dr. Jackson would like to give ChoiceSpine one last opportunity to take a license to his enabling device technologies" and demanded a response "within 30 days from the date of this letter to . . . hopefully avoid unneeded litigation." *Id*. This demand imposed an arbitrary deadline while still failing to provide the basic information necessary for Choice Spine to evaluate the alleged infringement.

61.     Counsel for Choice Spine responded to Defendants on April 6, 2023, informing Defendants that the February 8, 2023 letter "does not provide sufficient information about your infringement investigation or sufficient factual bases to support a claim that the accused Thunderbolt and Lancer devices infringe the asserted patents." **Exhibit 18.**

62.     Counsel for Choice Spine further requested that Defendants provide additional information necessary to evaluate the allegations, including "an infringement claim chart that identifies where each limitation of the asserted claims is found in the accused devices." *Id*. Counsel also requested that Defendants identify "the effective filing dates [they] assert[] to apply to claim 31 of the '548 patent and claim 1 of the '292 patent and the bases for the assertions," noting that "Choice Spine's products may be prior art, depending on the effective filing dates that applies to the claims." *Id*.

63. Defendants did not respond to Choice Spine's request for additional information for over a year. On April 26, 2024, Defendants sent another letter to Choice Spine, titled "Proposal Re Dr. Roger P. Jackson's Patent Portfolio for Spinal Implants." **Exhibit 19.**

64. In the April 26, 2024 letter, Defendants again requested the "the opportunity to meet with ChoiceSpine business representatives and engineers" to discuss a broad license to "substantially all of Dr. Jackson's spinal implant patent portfolio." *Id.* Along with the April 26, 2023 letter, Defendants included the "IP Portfolio Index" which included approximately three hundred (300) patents and pending patent applications, a majority of which were wholly irrelevant to any product manufactured or sold by Choice Spine. **Exhibit 20**.

65. The April 26, 2024 letter did not identify the effective filing dates for claim 31 of the '548 Patent or claim 1 of the '292 Patent, as Defendants had previously requested.

66. The April 26, 2024 letter also purported to contain "exemplar claim charts for claim 1 of U.S. Patent No. 10,245,078 and claim 1 of U.S. Patent No. 9,999,452," and noted that "Charts for claim 31 of U.S. Patent No. 11,464,548 and claim 1 of U.S. Patent No. 9,456,853 will be forthcoming." **Exhibit 19**. Defendants also, for the first time, introduced allegations of infringement for claim 1 of U.S. Patent No. 10,039,577 and claim 15 of U.S. Patent No. 11,931,080. *Id.*

67. Despite having asserted eight (8) patents against Choice Spine as of the April 26, 2024 letter, Defendants only provided four (4) claim charts in total: those for (1) U.S. Patent No. 9,999,452; (2) U.S. Patent No. 10,039,577; (3) U.S. Patent No. 10,245,078; and (4) U.S. Patent No. 11,931,080. *See* **Exhibit 21.**

68. Neither Defendants' April 26, 2024 letter nor the accompanying claim charts included the critical information required by § 29-10-102 of the BFAPIA. Specifically, neither

contained "[t]he factual allegations concerning the specific areas in which the intended recipient or affiliated person's products, services, or technology infringed the patent or are covered by the claims in the patent" as required by § 29-10-102(a)(3)(D)(iii) of the BFAPIA.

69. Rather than analyze each Choice Spine product on a claim-by-claim and element-by-element basis, Defendants' claim charts accompanying the April 26, 2024 letter impermissibly mixed and matched disparate Choice Spine products within a single purported infringement analysis, and in some instances alleged infringement by multiple devices while providing a purported analysis for only one, leaving it unclear which accused product allegedly practiced which claim limitation. By way of example, an excerpt of the claim chart provided for the '080 Patent is depicted below which alleged infringement of the Choice Spine Lancer and Thunderbolt devices, but only provided a purported analysis of the Choice Spine Thunderbolt product. *See* **Exhibit 21:**

70. The claim charts further failed to identify where each specific claim element was allegedly found within any actual Choice Spine product. Instead, Defendants simply pasted images of the allegedly infringing devices alongside portions of the asserted claims without any accompanying analysis. By way of example, an excerpt of the claim chart provided for the '080

Patent is depicted below and attached hereto as **Exhibit 21**:



71. In another example, excerpted below from the '078 Patent and also attached hereto as **Exhibit 21,** Defendants repeat the exact same figure (or slight variations thereof), with no analysis, for nine (9) separate limitations in its claim chart:





72.     Compounding these deficiencies, many of the figures relied upon in the claim charts were not drawn from Choice Spine's accused products, but instead from unrelated patents, further demonstrating that Defendants did not conduct a good-faith, product-specific infringement analysis prior to issuing the Demand Letter. For example, approximately half of the figures provided in the claim chart for the '080 Patent consist of images taken from an unidentified patent and are not accompanied by any analysis tying the asserted claim limitations to the accused Thunderbolt or Lancer devices. *See* **Exhibit 21** (excerpted below).





a lower end of the thread form extending down so as to be located at least adjacent to the lower annular edge,

the thread form of the threaded plug having a leading surface and a trailing surface extending outwardly with respect to the central axis of the cylindrical body of the threaded plug,

73.     The April 26, 2024 letter was addressed to Micael Bradford, counsel for Choice Spine, with an address of PO Box 1871, Knoxville, TN 37901. *See* **Exhibit 19.**

74.     Accordingly, when Defendants sent the April 26, 2024 letter, Defendants knew that Choice Spine was located in Tennessee.

75.     The April 26, 2024 letter was signed by Defendant Gemmell and printed on Defendant Polsinelli's letterhead. *Id.*

76.     On May 30, 2024, Defendants sent a follow up letter titled "Proposal Re Dr. Roger P. Jackson's Patent Portfolio for Spinal Implants." **Exhibit 22.** This letter informed Choice Spine of its alleged infringement of claim 19 of U.S. Patent No. 11,419,638.

77.     Accompanying the May 30, 2024 letter was a claim chart for the '638 Patent. **Exhibit 23**. Like the previous charts provided by Defendants, the claim chart for the '638 Patent was woefully deficient. The May 30, 2024 letter asserts that both the Choice Spine Thunderbolt and Lancer devices allegedly infringe the '638 Patent, yet the accompanying analysis fails to provide a coherent, product-specific mapping of the asserted claims for either of the allegedly infringing products.

78.     Instead, the claim chart presents a piecemeal analysis that shifts between the Thunderbolt and Lancer devices without clearly identifying which product is allegedly covered by each particular claim limitation. Defendants also do not provide a complete limitation-by-limitation analysis for either accused product, but rather rely on generalized and interchangeable references to both, leaving it unclear how any single product is alleged to infringe. By way of example, the excerpt below from the claim chart for the '638 Patent (attached hereto as **Exhibit 23**) highlights Defendants' improper interchangeability of the accused products and failure to provide any meaningful, product-specific analysis:

| | | | |
|---|---|---|---|
| the axial bore communicating with a bottom of the receiver through a lower opening and extending upward through the channel to a top of the receiver, the axial bore including a guide and advancement structure adjacent the top of the receiver configured to mate with the fastener and |  | an insert positionable within the axial bore of the receiver having an upper surface configured to receive the fixation rod, a lower surface configured to transfer the downwardly-directed force toward the proximal end portion of the shank to lock the assembly, and a central aperture configured to provide access to the internal drive socket of the proximal end portion by the drive tool, |  |
| an internal support surface adjacent the lower opening configured to pivotably receive the partially spherical lower surface of the proximal end portion of the shank with the shank extending downward through the lower opening; and |  | wherein after assembly of the proximal end portion of the shank and the insert into the axial bore of the receiver, the planar top surface on the proximal end portion is configured to remain spaced apart from the lower surface of the insert so as to not directly receive the downwardly-directed force when the assembly is locked by the fastener. |  |

79.     Further, as with Defendants' prior claim charts, the purported analysis of the '638 Patent significantly relies on figures drawn from unidentified patents rather than the accused products themselves and fails to include any meaningful explanation tying the asserted claim

limitations to the Thunderbolt or Lancer devices. *See* **Exhibit 23,** excerpted below:



80. The May 30, 2024 letter was addressed to Micael Bradford, counsel for Choice Spine, with an Address of PO Box 1871, Knoxville, TN 37901. *See* **Exhibit 22.**

81. Accordingly, when Defendants sent the May 30, 2024 letter, Defendants knew that Choice Spine was located in Tennessee.

82. The May 30, 2024 letter was signed by Defendant Gemmell and printed on Defendant Polsinelli's letterhead. *Id.*

83. Counsel for Choice Spine responded to Defendants' allegations on June 7, 2024, requesting Defendants coordinate a meeting between Jackson and Choice Spine to discuss the infringement allegations. *See* **Exhibit 24**.

84. Gemmell responded to Choice Spine's counsel on June 11, 2024, stating that he had relayed the request for a meeting to Jackson and expected to be back in touch with Choice Spine shortly. *Id.*

85. Following the June 11, 2024 email, Defendants did not contact Choice Spine for nearly two years. On March 3, 2026, Defendants sent an email to Choice Spine's counsel, tying their communication to an existing email chain concerning unrelated infringement allegations against Zavation, Choice Spine's parent company following its recent acquisition of Choice Spine.

*See* **Exhibit 25**

86.     Defendants' March 3, 2026 email contained infringement allegations for seven (7) patents, five (5) of which had not previously been asserted against Choice Spine. Along with the March 3, 2026 email, Defendants included claim charts for each of the seven (7) patents: (1) U.S. Patent No. 9,456,853; (2) 9,953,006; (3) 11,129,646 (4) 11,399,873; (5) 11,464,548; (6) 11,849,977; and (7) 11,925,392. **Exhibit 26**.

87.     Notably, the March 3, 2026 correspondence marked the first time Defendants asserted U.S. Patent No. 11,399,873 against Choice Spine. At the time of this assertion, Defendants knew that all claims of the '873 Patent had been disclaimed months prior.

88.     Specifically, on March 26, 2025, Seaspine Holdings Corp. filed an Inter-Partes Review petition challenging the '873 Patent before the United States Patent and Trademark Office (IPR2025-00773, *Seaspine Holdings Corp. v. Roger P. Jackson, M.D. et al.*). **Exhibit 27**.

89.     On July 18, 2025, Dr. Jackson, acting through the Polsinelli Defendants, disclaimed all claims of the '873 Patent in an unappealed administrative decision. *See* **Exhibit 28** ("Patent Owner has filed a statutorily disclaimer for all claims of the '873 Patent mooting the instant IPR petition in part to avoid the expenditure of additional time and money.")

90.     Accordingly, when the Polsinelli Defendants asserted the '873 Patent against Choice Spine on March 3, 2026—more than seven months after disclaiming all of its claims— they did so with full knowledge that the patent had no remaining valid or enforceable claims, thereby lacking any reasonable basis in fact or law for Defendants' bad faith assertion.

91.     Beyond asserting a patent with no valid claims, the claim charts accompanying the March 3, 2026 correspondence were substantively deficient. *See* **Exhibit 26** Like all of Defendants' previous claim charts, they did not provide any meaningful, product-specific

infringement analysis. Instead, Defendants again failed to map the asserted claim limitations to the accused products in any coherent manner, relying on conclusory assertions, shifting references between products and, in many instances, relying on figures drawn from unidentified patents rather than the accused devices themselves.

92.     For example, the figure excerpted below from the '392 Patent claim chart (attached hereto as **Exhibit 26)**, identifies both the Lancer and Thunderbolt product lines as allegedly infringing. However, the images provided with the claim chart are of such low quality that Choice Spine is unable to discern which product is allegedly depicted:



93.     Additionally, the claim chart provided for the '392 Patent does not include the requisite information required under the BFAPIA to provide Choice Spine with notice of the alleged infringement. For example, the chart merely reiterates portions of the claim limitations in

a piecemeal fashion without identifying where or how the specific limitations are purportedly met in the accused products. In the excerpt below, "internal cavity," "bottom opening," and "upper portion" are each recited as separate limitations in claim 1 of the '392 Patent, yet none of these elements are meaningfully identified in the corresponding figure, nor does the chart provide any distinction or analysis as to how each limitation is satisfied. Instead, the claim chart simply offers a generalized reference to the "receiver" without tying that assertion to any specific structure in the accused products:



94.     These same deficiencies are not isolated to the '392 Patent claim chart but are pervasive throughout each of the nine (9) claim charts provided by Defendants with the March 3, 2026 letter. *See* **Exhibit 26.**

95.     By way of further example, the claim chart for claim 1 of the '646 Patent alleges infringement of at least five distinct product lines: (1) Lancer; (2) Thunderbolt MIS; (3)

Thunderbolt EXTAB; (4) Blackbird; and (5) Proliant. However, the claim chart provided does not provide a fulsome analysis for any one product:



96.     In many instances, the purported analysis fails to identify where key claim elements are found. For example, claim 1 recites an "annular outer edge," a "root," a "crest," a "leading surface," and a "radius of curvature," none of which are identified or meaningfully addressed in the claim chart:



a plug being threaded and configured to be positioned within the upper portion, the plug having an axis of rotation, a continuously helically wound thread form, and a substantially flat bottom surface with an annular outer edge, the substantially flat bottom surface configured to engage the rod, the continuously helically wound thread form having a start structure with an upper surface extending between a root and a crest of the continuously helically wound thread form, the start structure having a leading face extending below the upper surface to a lower surface of the start structure, the leading face including a partial concave surface adjacent the root and a partial convex surface adjacent the crest, the partial concave and partial convex surfaces each defined by a radius of curvature that is substantially equal with respect to each other, the lower surface of the start structure being spaced apart and above the annular outer edge of the substantially flat bottom surface so as to not be connected with the annular outer edge thereof.

R0

97.     As another example, an excerpt of the claim chart for claim 10 of the '646 Patent is provided below (excerpted from **Exhibit 26**). Claim 10 recites numerous limitations which Defendants do not meaningfully identify for any Choice Spine product, including at least: (1) "first breakoff extension"; (2) "top surface of the first arm"; (3) "second breakoff extension"; (4) "inner surface"; (5) "discontinuously helically wound thread"; (6) "plug"; and various other structural and functional limitations such as "the discontinuously helically wound thread form of the second breakoff extension configured to cooperate with the discontinuously helically wound thread of the second arm to rotatably transfer the plug." None of these limitations are meaningfully identified, rather the asserted claim chart simply reads the "first and second arms include breakoff extensions" without even identifying where the breakoff extensions are purportedly located:

10. The medical implant assembly of claim 9, wherein the first arm includes a first breakoff extension coupled to the top surface of the first arm, and the second arm includes a second breakoff extension coupled to the top surface of the second arm, each of the first and second breakoff extensions including an inner surface having a discontinuously helically wound thread form, the discontinuously helically wound thread form of the first breakoff extension configured to cooperate with the discontinuously helically wound thread of the first arm, and the discontinuously helically wound thread form of the second breakoff extension configured to cooperate with the discontinuously helically wound thread of the second arm to rotatably transfer the plug therebetween prior to the first and second breakoff extensions being separated from the first and second arms, respectively.

*first and second arms include breakoff extensions*

98. The March 3, 2026 email sent by Defendant Iqbal included a direct demand that Choice Spine enter into a license agreement: "[W]e have also become aware that Zavation has acquired Choice Spine. These products similarly require a license to at least the claims cited in the attached exemplary charts." *See* **Exhibit 25**.

99. To date, Defendants have asserted fourteen (14) patents against Choice Spine. However, Defendants have only provided claim charts for twelve (12) patents. No claim charts have been provided for the '689 Patent or the '292 Patent originally asserted in Defendants' February 28, 2023 letter. *See* **Exhibit 16.**

100. For the remaining Asserted Patents, rather than providing adequate claim charts detailing how each Choice Spine product allegedly infringes each patent, Defendants have continued to demand that Choice Spine enter into a license agreement covering the Asserted Patents and all of the Jackson Patents, while refusing to provide the basic factual support necessary to substantiate their infringement allegations. This conduct reflects Defendants' continued bad-

faith efforts to pressure Choice Spine into paying for a license without first demonstrating any legitimate basis for their claims.

### *CHOICE SPINE DOES NOT INFRINGE THE ASSERTED PATENTS*

101. Choice Spine does not directly or indirectly infringe any valid claim of the Asserted Patents. To the best of Choice Spine's knowledge, no third party infringes any valid claim of the Asserted Patents by using Choice Spine's products. Choice Spine has not caused, directed, requested, or facilitated any such infringement, must less with any specific intent to do so. Choice Spine's posterior fixation products are not designed for use in any combination which infringes any valid claim of the Asserted Patents. To the contrary, Choice Spine's products have substantial uses that do not infringe any valid claim of the Asserted Patents.

### *DEFENDANTS' CONDUCT VIOLATES THE TENNESSEE BAD FAITH ASSERTIONS OF PATENT INFRINGEMENT ACT (THE "BFAPIA")*

102. The BFAPIA guidelines explicitly provide multiple distinct factors and sub-factors when assessing whether a party is asserting a patent infringement claim in bad faith. *See* BFAPIA, § 29-10-102(a)(1-3). Several of the enumerated factors support a finding that Defendants have made a bad-faith patent assertion against Choice Spine.

103. First, under § 29-10-102(a)(1), bad-faith patent infringement can be found if "[t]he communication threatens litigation if compensation is not paid or the infringement issue is not otherwise resolved and there is a consistent pattern of such threats having been issued and no litigation having been filed."

104. Although Defendants have not always expressly used the word "litigation," their communications have clearly implied the prospect of impending legal action since their initial July 14, 2022 Letter. *See* **Exhibit 15.** In that letter, Defendants explained that Jackson "has come to believe that ChoiceSpine's THUNDERBOLT™ minimally invasive pedicle screw system and

LANCER™ open pedicle screw system products may infringe one or more claims of certain of his patents," and expressly proposed a "broad licensing arrangement to open the way for ChoiceSpine to continue to make and sell, as well as to further develop, its products."

105. In later letters, the threat of litigation if no license was taken was clear. For example, in the February 28, 2023 letter, counsel stated that "Dr. Jackson would like to give ChoiceSpine one last opportunity to take a license to his enabling device technologies," in order to "hopefully avoid unneeded litigation." *See* **Exhibit 16**.

106. This course of conduct has persisted for nearly four years. During that time, Defendants have repeatedly raised allegations of infringement and suggested that the matter should be resolved through a license, yet they have not initiated litigation to adjudicate their claims, thereby maintaining a cloud of uncertainty over Choice Spine's rights to continue selling its full line of spinal products.

107. Moreover, Defendants' communications have been sporadic and characterized by lengthy periods of silence. For example, Defendants waited over six (6) months to follow up on their July 14, 2022 letter, *see* **Exhibit 15**, only doing so on February 28, 2023. *See* **Exhibit 16.**

108. Thereafter, when Choice Spine requested Defendants provide claim charts to substantiate the allegations in their February 28, 2023 letter, **Exhibit 18,** Defendants waited over one (1) full year to respond, finally producing a limited and deficient set of claim charts on April 26, 2024. *See* **Exhibit 19**. And when Defendants did finally provide claim charts, the charts did not even address all of the infringement allegations raised in the February 28, 2023 letter.

109. Further demonstrating Defendants' inaction, Choice Spine's June 7, 2024 offer to meet and discuss the infringement allegations with Jackson, **Exhibit 24**, was acknowledged but otherwise ignored for nearly two (2) more years, until Defendants' March 3, 2026 email to Choice

Spine's counsel, which for the first time asserted five additional Jackson Patents. *See* **Exhibit 25**.

110. Defendants' pattern of delay, characterized by prolonged periods of silence followed by renewed communications implying potential litigation, and repeated attempts to extract a license, demonstrates the type of conduct § 29-10-102(a)(1) identifies as bad-faith patent assertions.

111. Moreover, under § 29-10-102(a)(3)(C), bad-faith patent infringement can be found if "[t]he communication seeks compensation on account of activities undertaken after the patent has expired."

112. Here, of the fourteen (14) asserted patents, seven (7) have expired. Despite this, Defendants' communications and licensing demands have failed to meaningfully distinguish between the expired patents and the patents that remain in force.

113. Instead, Defendants have presented their assertions as a single "portfolio" of patents and have sought to negotiate a license covering the entire group of Jackson Patents and Asserted Patents, without acknowledging that a substantial portion of those patents have already expired and therefore cannot support a claim for ongoing infringement.

114. By continuing to rely on expired patents as part of their licensing demands and by failing to clarify that no compensation could be owed for activities occurring after those patents' expiration, Defendants have sought compensation based, at least in part, on activities undertaken after the expiration of the asserted patents. This conduct constitutes further evidence of Defendants' bad-faith patent assertion under § 29-10-102(a)(3)(C).

115. In addition, under § 29-10-102(a)(3)(D)(iii), bad-faith patent infringement can be found if "[t]he content of the communication fails to include the information necessary to inform an intended recipient . . . [of the] factual allegations concerning the specific areas in which the

intended recipient or affiliated person's products, services, or technology infringed the patent or are covered by the claims in the patent."

116. Here, Defendants' communications fail to provide the information necessary to meaningfully inform Choice Spine of the factual basis for their allegations of infringement. Indeed, Defendants' initial infringement communication did not even identify the patent numbers allegedly infringed, in direct violation of § 29-10-102(a)(3)(D), which requires that such communications include, among other things, "[t]he patent number issued by the United States Patent and Trademark Office alleged to have been infringed." § 29-10-102(a)(3)(D)(ii).

117. Although Defendants have since provided what they characterize as claim charts for some of the Asserted Patents, they have failed to do so for all asserted patents. For example, no claim charts have been provided for the '689 Patent or the '292 Patent originally asserted in Defendants' February 28, 2023 letter. *See* **Exhibit 16**.

118. Moreover, even where claim charts have been provided, those materials do not identify how the Choice Spine accused products purportedly meet the specific limitations of the asserted claims of the Asserted Patents. Instead, the claim charts merely reproduce the claim language alongside images taken from figures in Choice Spine patents, without explaining how any component, feature, or functionality of Choice Spine's products corresponds to the asserted claim limitations.

119. On numerous occasions, Defendants have alleged that multiple Choice Spine products infringe one or more of the Asserted Patents, yet their limited claim charts are piecemeal and, in some instances, fail entirely to address one or more of the accused products.

120. As a result, Defendants have not provided Choice Spine with a substantive explanation of the alleged infringement or identified the specific aspects of Choice Spine's

products that supposedly satisfy each claim element. These deficient materials fail to provide the level of factual detail required to inform Choice Spine of the alleged infringement and therefore constitute further evidence of bad-faith patent assertions under § 29-10-102(a)(3)(D)(iii).

121. All of the Defendants are obligated to ensure that their infringement allegations are supported by a reasonable factual and legal basis. Under Rule 11 of the Federal Rules of Civil Procedure, attorneys who present claims or allegations certify that, after a reasonable inquiry, such contentions have evidentiary support and are not asserted for any improper purpose.

122. Despite these obligations, Defendants transmitted infringement allegations and deficient claim charts to Choice Spine without conducting a reasonable investigation sufficient to support the asserted claims.

## FIRST COUNT

**(Declaration of Non-Infringement of U.S. Patent No. 6,726,689)**

123. Choice Spine restates and incorporates by reference all allegations in this Complaint as if fully set forth herein.

124. Upon information and belief, Defendant Jackson claims to own all rights, title, and interest in U.S. Patent No. 6,726,689 (the "'689 Patent"), including the right to seek damages for past, present, and future infringement thereof. A true and correct copy of the '689 Patent is attached hereto as **Exhibit 1**.

125. Defendants have accused Choice Spine of infringing the '689 Patent based on allegations concerning Choice Spine's spinal fixation products, including the Lancer and Thunderbolt spinal systems and related product line extensions.

126. A substantial, immediate, and real controversy therefore exists between Choice Spine and Defendants regarding whether Choice Spine's products infringe, have infringed, or otherwise violate any valid claim of the '689 Patent. A judicial declaration is necessary to

determine the parties' respective rights and obligations with respect to the '689 Patent.

127. Choice Spine seeks a judgment declaring that it has not infringed and does not infringe, either directly or indirectly, any valid and enforceable claim of the '689 Patent. Based on Choice Spine's present understanding of the '689 Patent and Defendants' allegations, none of Choice Spine's spinal systems meet or embody the claims of the '689 Patent.

## SECOND COUNT

### (Declaration of Non-Infringement of U.S. Patent No. 9,456,853)

128. Choice Spine restates and incorporates by reference all allegations in this Complaint as if fully set forth herein. Upon information and belief, Defendant Jackson claims to own all rights, title, and interest in U.S. Patent No. 9,456,853 (the "'853 Patent"), including the right to seek damages for past, present, and future infringement thereof. A true and correct copy of the '853 Patent is attached hereto as **Exhibit 2**.

129. Defendants have accused Choice Spine of infringing the '853 Patent based on allegations concerning Choice Spine's spinal fixation products, including the Lancer and Thunderbolt spinal systems and related product line extensions.

130. A substantial, immediate, and real controversy therefore exists between Choice Spine and Defendants regarding whether Choice Spine's products infringe, have infringed, or otherwise violate any valid claim of the '853 Patent. A judicial declaration is necessary to determine the parties' respective rights and obligations with respect to the '853 Patent.

131. Choice Spine seeks a judgment declaring that it has not infringed and does not infringe, either directly or indirectly, any valid and enforceable claim of the '853 Patent. Based on Choice Spine's present understanding of the '853 Patent and Defendants' allegations, none of Choice Spine spinal systems meet or embody the claims of the '853 Patent.

**THIRD COUNT**

**(Declaration of Non-Infringement of U.S. Patent No. 9,808,292)**

132. Choice Spine restates and incorporates by reference all allegations in this Complaint as if fully set forth herein. Upon information and belief, Defendant Jackson claims to own all rights, title, and interest in U.S. Patent No. 9,808,292 (the "'292 Patent"), including the right to seek damages for past, present, and future infringement thereof. A true and correct copy of the '292 Patent is attached hereto as **Exhibit 3**.

133. Defendants have accused Choice Spine of infringing the '292 Patent based on allegations concerning Choice Spine's spinal fixation products, including the Lancer and Thunderbolt spinal systems and related product line extensions.

134. A substantial, immediate, and real controversy therefore exists between Choice Spine and Defendants regarding whether Choice Spine's products infringe, have infringed, or otherwise violate any valid claim of the '292 Patent. A judicial declaration is necessary to determine the parties' respective rights and obligations with respect to the '292 Patent.

135. Choice Spine seeks a judgment declaring that it has not infringed and does not infringe, either directly or indirectly, any valid and enforceable claim of the '292 Patent. Based on Choice Spine's present understanding of the '292 Patent and Defendants' allegations, none of Choice Spine's spinal systems meet or embody the claims of the '292 Patent.

**FOURTH COUNT**

**(Declaration of Non-Infringement of U.S. Patent No. 9,953,006)**

136. Choice Spine restates and incorporates by reference all allegations in this Complaint as if fully set forth herein. Upon information and belief, Defendant Jackson claims to own all rights, title, and interest in U.S. Patent No. 9,953,006 (the "'006 Patent"), including the right to seek damages for past, present, and future infringement thereof. A true and correct copy

of the '006 Patent is attached hereto as **Exhibit 4**.

137. Defendants have accused Choice Spine of infringing the '006 Patent based on allegations concerning Choice Spine's spinal fixation products, including the Lancer and Thunderbolt MIS spinal systems and related product line extensions.

138. A substantial, immediate, and real controversy therefore exists between Choice Spine and Defendants regarding whether Choice Spine's products infringe, have infringed, or otherwise violate any valid claim of the '006 Patent. A judicial declaration is necessary to determine the parties' respective rights and obligations with respect to the '006 Patent.

139. Choice Spine seeks a judgment declaring that it has not infringed and does not infringe, either directly or indirectly, any valid and enforceable claim of the '006 Patent. Based on Choice Spine's present understanding of the '006 Patent and Defendants' allegations, none of Choice Spine's spinal systems meet or embody the claims of the '006 Patent.

## FIFTH COUNT

### (Declaration of Non-Infringement of U.S. Patent No. 9,999,452)

140. Choice Spine restates and incorporates by reference all allegations in this Complaint as if fully set forth herein. Upon information and belief, Defendant Jackson claims to own all rights, title, and interest in U.S. Patent No. 9,999,452 (the "'452 Patent"), including the right to seek damages for past, present, and future infringement thereof. A true and correct copy of the '452 Patent is attached hereto as **Exhibit 5**.

141. Defendants have accused Choice Spine of infringing the '452 Patent based on allegations concerning Choice Spine's spinal fixation products, including the Lancer and Thunderbolt spinal systems and related product line extensions.

142. A substantial, immediate, and real controversy therefore exists between Choice Spine and Defendants regarding whether Choice Spine's products infringe, have infringed, or

otherwise violate any valid claim of the '452 Patent. A judicial declaration is necessary to determine the parties' respective rights and obligations with respect to the '452 Patent.

143. Choice Spine seeks a judgment declaring that it has not infringed and does not infringe, either directly or indirectly, any valid and enforceable claim of the '452 Patent. Based on Choice Spine's present understanding of the '452 Patent and Defendants' allegations, none of Choice Spine's spinal systems meet or embody the claims of the '452 Patent.

## SIXTH COUNT

### (Declaration of Non-Infringement of U.S. Patent No. 10,039,577)

144. Choice Spine restates and incorporates by reference all allegations in this Complaint as if fully set forth herein. Upon information and belief, Defendant Jackson claims to own all rights, title, and interest in U.S. Patent No. 10,039,577 (the "'577 Patent"), including the right to seek damages for past, present, and future infringement thereof. A true and correct copy of the '577 Patent is attached hereto as **Exhibit 6**.

145. Defendants have accused Choice Spine of infringing the '577 Patent based on allegations concerning Choice Spine's spinal fixation products, including the Lancer and Thunderbolt spinal systems and related product line extensions.

146. A substantial, immediate, and real controversy therefore exists between Choice Spine and Defendants regarding whether Choice Spine's products infringe, have infringed, or otherwise violate any valid claim of the '577 Patent. A judicial declaration is necessary to determine the parties' respective rights and obligations with respect to the '577 Patent.

147. Choice Spine seeks a judgment declaring that it has not infringed and does not infringe, either directly or indirectly, any valid and enforceable claim of the '577 Patent. Based on Choice Spine's present understanding of the '577 Patent and Defendants' allegations, none of Choice Spine's spinal systems meet or embody the claims of the '577 Patent.

<b><u>SEVENTH COUNT</u></b>

<b>(Declaration of Non-Infringement of U.S. Patent No. 10,245,078)</b>

148.  Choice Spine restates and incorporates by reference all allegations in this Complaint as if fully set forth herein. Upon information and belief, Defendant Jackson claims to own all rights, title, and interest in U.S. Patent No. 10,245,078 (the "'078 Patent"), including the right to seek damages for past, present, and future infringement thereof. A true and correct copy of the '078 Patent is attached hereto as **Exhibit 7**.

149.  Defendants have accused Choice Spine of infringing the '078 Patent based on allegations concerning Choice Spine's spinal fixation products, including the Lancer and Thunderbolt spinal systems and related product line extensions.

150.  A substantial, immediate, and real controversy therefore exists between Choice Spine and Defendants regarding whether Choice Spine's products infringe, have infringed, or otherwise violate any valid claim of the '078 Patent. A judicial declaration is necessary to determine the parties' respective rights and obligations with respect to the '078 Patent.

151.  Choice Spine seeks a judgment declaring that it has not infringed and does not infringe, either directly or indirectly, any valid and enforceable claim of the '078 Patent. Based on Choice Spine's present understanding of the '078 Patent and Defendants' allegations, none of Choice Spine's spinal systems meet or embody the claims of the '078 Patent.

<b><u>EIGHTH COUNT</u></b>

<b>(Declaration of Non-Infringement of U.S. Patent No. 11,129,646)</b>

152.  Choice Spine restates and incorporates by reference all allegations in this Complaint as if fully set forth herein. Upon information and belief, Defendant Jackson claims to own all rights, title, and interest in U.S. Patent No. 11,129,646, (the "'646 Patent"), including the right to seek damages for past, present, and future infringement thereof. A true and correct copy

of the '646 Patent is attached hereto as **Exhibit 8**.

153. Defendants have accused Choice Spine of infringing the '646 Patent based on allegations concerning Choice Spine's spinal fixation products, including the Lancer, Thunderbolt MIS, Thunderbolt EXTAB, Blackbird, and Proliant spinal systems and related product line extensions.

154. A substantial, immediate, and real controversy therefore exists between Choice Spine and Defendants regarding whether Choice Spine's products infringe, have infringed, or otherwise violate any valid claim of the '646 Patent. A judicial declaration is necessary to determine the parties' respective rights and obligations with respect to the '646 Patent.

155. Choice Spine seeks a judgment declaring that it has not infringed and does not infringe, either directly or indirectly, any valid and enforceable claim of the '646 Patent. Based on Choice Spine's present understanding of the '646 Patent and Defendants' allegations, none of Choice Spine's spinal systems meet or embody the claims of the '646 Patent.

## <u>NINTH COUNT</u>

**(Declaration of Non-Infringement of U.S. Patent No. 11,399,873)**

156. Choice Spine restates and incorporates by reference all allegations in this Complaint as if fully set forth herein. Upon information and belief, Defendant Jackson claims to own all rights, title, and interest in U.S. Patent No. 11,399,873 (the "'873 Patent"), including the right to seek damages for past, present, and future infringement thereof. A true and correct copy of the '873 Patent is attached hereto as **Exhibit 9**.

157. Defendants have accused Choice Spine of infringing the '873 Patent based on allegations concerning Choice Spine's spinal fixation products, including the Lancer, Thunderbolt MIS, Thunderbolt EXTAB, Blackbird, and Proliant spinal systems and related product line extensions.

158. On July 18, 2025, in response to an Inter-Partes Review petition filed by Seaspine Holdings Corp. (IPR2025-00773), Dr. Jackson, acting through the Polsinelli Defendants, disclaimed all claims of the '873 Patent in an unappealed administrative decision. Accordingly, the '873 Patent has no valid or enforceable claims.

159. A substantial, immediate, and real controversy therefore exists between Choice Spine and Defendants regarding whether Choice Spine's products infringe, have infringed, or otherwise violate any valid claim of the '873 Patent. A judicial declaration is necessary to determine the parties' respective rights and obligations with respect to the '873 Patent.

160. Choice Spine seeks a judgment declaring that it has not infringed and does not infringe, either directly or indirectly, any valid and enforceable claim of the '873 Patent. Based on Choice Spine's present understanding of the '873 Patent and Defendants' allegations, none of Choice Spine's spinal systems meet or embody the claims of the '873 Patent. Moreover, because all claims of the '873 Patent have been disclaimed, there are no remaining valid or enforceable claims that Choice Spine could infringe.

## TENTH COUNT

**(Declaration of Non-Infringement of U.S. Patent No. 11,419,638)**

161. Choice Spine restates and incorporates by reference all allegations in this Complaint as if fully set forth herein. Upon information and belief, Defendant Jackson claims to own all rights, title, and interest in U.S. Patent No. 11,419,638 (the "'638 Patent"), including the right to seek damages for past, present, and future infringement thereof. A true and correct copy of the '638 Patent is attached hereto as **Exhibit 10**.

162. Defendants have accused Choice Spine of infringing the '638 Patent based on allegations concerning Choice Spine's spinal fixation products, including the Lancer and Thunderbolt spinal systems and related product line extensions.

163. A substantial, immediate, and real controversy therefore exists between Choice Spine and Defendants regarding whether Choice Spine's products infringe, have infringed, or otherwise violate any valid claim of the '638 Patent. A judicial declaration is necessary to determine the parties' respective rights and obligations with respect to the '638 Patent.

164. Choice Spine seeks a judgment declaring that it has not infringed and does not infringe, either directly or indirectly, any valid and enforceable claim of the '638 Patent. Based on Choice Spine's present understanding of the '638 Patent and Defendants' allegations, none of Choice Spine's spinal systems meet or embody the claims of the '638 Patent.

## ELEVENTH COUNT

### (Declaration of Non-Infringement of U.S. Patent No. 11,464,548)

165. Choice Spine restates and incorporates by reference all allegations in this Complaint as if fully set forth herein. Upon information and belief, Defendant Jackson claims to own all rights, title, and interest in U.S. Patent No. 11,464,548 (the "'548 Patent"), including the right to seek damages for past, present, and future infringement thereof. A true and correct copy of the '548 Patent is attached hereto as **Exhibit 11**.

166. Defendants have accused Choice Spine of infringing the '548 Patent based on allegations concerning Choice Spine's spinal fixation products, including the Lancer and Thunderbolt MIS spinal systems and related product line extensions.

167. A substantial, immediate, and real controversy therefore exists between Choice Spine and Defendants regarding whether Choice Spine's products infringe, have infringed, or otherwise violate any valid claim of the '548 Patent. A judicial declaration is necessary to determine the parties' respective rights and obligations with respect to the '548 Patent.

168. Choice Spine seeks a judgment declaring that it has not infringed and does not infringe, either directly or indirectly, any valid and enforceable claim of the '548 Patent. Based on

Choice Spine's present understanding of the '548 Patent and Defendants' allegations, none of Choice Spine's spinal systems meet or embody the claims of the '548 Patent.

## TWELFTH COUNT

### (Declaration of Non-Infringement of U.S. Patent No. 11,849,977)

169. Choice Spine restates and incorporates by reference all allegations in this Complaint as if fully set forth herein. Upon information and belief, Defendant Jackson claims to own all rights, title, and interest in U.S. Patent No. 11,849,977 (the "'977 Patent"), including the right to seek damages for past, present, and future infringement thereof. A true and correct copy of the '977 Patent is attached hereto as **Exhibit 12**.

170. Defendants have accused Choice Spine of infringing the '977 Patent based on allegations concerning Choice Spine's spinal fixation products, including the Lancer and Thunderbolt MIS spinal systems and related product line extensions.

171. A substantial, immediate, and real controversy therefore exists between Choice Spine and Defendants regarding whether Choice Spine's products infringe, have infringed, or otherwise violate any valid claim of the '977 Patent. A judicial declaration is necessary to determine the parties' respective rights and obligations with respect to the '977 Patent.

172. Choice Spine seeks a judgment declaring that it has not infringed and does not infringe, either directly or indirectly, any valid and enforceable claim of the '977 Patent. Based on Choice Spine's present understanding of the '977 Patent and Defendants' allegations, none of Choice Spine's spinal systems meet or embody the claims of the '977 Patent.

## THIRTEENTH COUNT

### (Declaration of Non-Infringement of U.S. Patent No. 11,925,393)

173. Choice Spine restates and incorporates by reference all allegations in this Complaint as if fully set forth herein. Upon information and belief, Defendant Jackson claims to

own all rights, title, and interest in U.S. Patent No. 11,925,392 (the "'392 Patent"), including the right to seek damages for past, present, and future infringement thereof. A true and correct copy of the '392 Patent is attached hereto as **Exhibit 13**.

174. Defendants have accused Choice Spine of infringing the '392 Patent based on allegations concerning Choice Spine's spinal fixation products, including the Lancer and Thunderbolt MIS spinal systems and related product line extensions.

175. A substantial, immediate, and real controversy therefore exists between Choice Spine and Defendants regarding whether Choice Spine's products infringe, have infringed, or otherwise violate any valid claim of the '392 Patent. A judicial declaration is necessary to determine the parties' respective rights and obligations with respect to the '392 Patent.

176. Choice Spine seeks a judgment declaring that it has not infringed and does not infringe, either directly or indirectly, any valid and enforceable claim of the '392 Patent. Based on Choice Spine's present understanding of the '392 Patent and Defendants' allegations, none of Choice Spine's spinal systems meet or embody the claims of the '392 Patent.

<u>**FOURTEENTH COUNT**</u>

**(Declaration of Non-Infringement of U.S. Patent No. 11,931,080)**

177. Choice Spine restates and incorporates by reference all allegations in this Complaint as if fully set forth herein. Upon information and belief, Defendant Jackson claims to own all rights, title, and interest in U.S. Patent No. 11,931,080 (the "'080 Patent"), including the right to seek damages for past, present, and future infringement thereof. A true and correct copy of the '080 Patent is attached hereto as **Exhibit 14**.

178. Defendants have accused Choice Spine of infringing the '080 Patent based on allegations concerning Choice Spine's spinal fixation products, including the Lancer and Thunderbolt systems and related product line extensions.

179. A substantial, immediate, and real controversy therefore exists between Choice Spine and Defendants regarding whether Choice Spine's products infringe, have infringed, or otherwise violate any valid claim of the '080 Patent. A judicial declaration is necessary to determine the parties' respective rights and obligations with respect to the '080 Patent.

180. Choice Spine seeks a judgment declaring that it has not infringed and does not infringe, either directly or indirectly, any valid and enforceable claim of the '080 Patent. Based on Choice Spine's present understanding of the '080 Patent and Defendants' allegations, none of Choice Spine's spinal systems meet or embody the claims of the '080.

## FIFTEENTH COUNT

### (Declaration of Invalidity of U.S. Patent No. 6,726,689)

181. Choice Spine restates and incorporates by reference all allegations in this Complaint as if fully set forth herein.

182. In view of the facts and allegations set forth above, there is an actual, justiciable, substantial, and immediate controversy between Choice Spine and Defendants regarding the validity of the '689 Patent. Absent a declaration of invalidity, Defendants will continue to assert the '689 Patent wrongfully, thereby injuring Choice Spine.

183. The Claims of the '689 Patent are invalid and unenforceable because one or more claims fail to meet the "conditions of patentability" of 35 U.S.C. §§ 102, 103, and/or 112. Specifically, the claims of the '689 Patent are invalid at least for claiming unpatentable subject matter by being anticipated under 35 U.S.C. § 102, for being obvious under 35 U.S.C. § 103, and/or for failing to comply with the written description, enablement, and/or definiteness requirements of 35 U.S.C. § 112.

184. The claims are not enabled, lack novelty, are each taught and suggested by the prior art, and are obvious in view of the prior art. For example, the independent claims each recite

product features or other similar limitations that would have been obvious in view of, at least, the prior art of record in the patent prosecution history.

185. By way of non-limiting example, upon information and belief, the claims of the '689 Patent are invalid as obvious under International Patent Application WO2003024343, titled "Spinal osteosynthesis system comprising a support pad" to Vienney, alone or alternatively in view of U.S. Patent Application Publication No. 2004/0153068 titled "Low profile spinal fixation system" to Janowski, in view of U.S. Patent No. 7,618,444 titled "Surgical instrument for moving a vertebra" to Shluzas, in view of U.S. Patent No. 8,617,210 titled "Percutaneous access devices and bone anchor assemblies" to Sicvol, in view of U.S. Patent No. 8,828,060 titled "Element with a shank and a holding element connected to it for connecting to a rod" to Biedermann, in addition to the prior art of record in the '689 Patent prosecution history, as well as various posterior fixation devices publicly available prior to the earliest priority date of the '689 Patent.

186. The '689 Patent fails to comply with the written description, enablement, and definiteness requirements of 35 U.S.C. § 112 in that the asserted claim(s) contain(s) terms that lack enablement or written description under Pre-America Invents Act ("pre-AIA") 35 U.S.C. § 112.

187. Choice Spine is entitled to a declaration that one or more asserted claims of the '689 Patent is invalid.

**SIXTEENTH COUNT**

**(Declaration of Invalidity of U.S. Patent No. 9,456,853)**

188. Choice Spine restates and incorporates by reference all allegations in this Complaint as if fully set forth herein.

189. In view of the facts and allegations set forth above, there is an actual, justiciable, substantial, and immediate controversy between Choice Spine and Defendants regarding the validity of the '853 Patent. Absent a declaration of invalidity, Defendants will continue to assert

the '853 Patent wrongfully, thereby injuring Choice Spine.

190. The Claims of the '853 Patent are invalid and unenforceable because one or more claims fail to meet the "conditions of patentability" of 35 U.S.C. §§ 102, 103, and/or 112. Specifically, the claims of the '853 Patent are invalid at least for claiming unpatentable subject matter by being anticipated under 35 U.S.C. § 102, for being obvious under 35 U.S.C. § 103, and/or for failing to comply with the written description, enablement, and/or definiteness requirements of 35 U.S.C. § 112.

191. The claims are not enabled, lack novelty, are each taught and suggested by the prior art, and are obvious in view of the prior art. For example, the independent claims each recite product features or other similar limitations that would have been obvious in view of, at least, the prior art of record in the patent prosecution history.

192. By way of non-limiting example, upon information and belief, the claims of the '853 Patent are invalid as obvious under International Patent Application WO2003024343, titled "Spinal osteosynthesis system comprising a support pad" to Vienney, alone or alternatively in view of U.S. Patent Application Publication No. 2004/0153068 titled "Low profile spinal fixation system" to Janowski, in view of U.S. Patent No. 7,618,444 titled "Surgical instrument for moving a vertebra" to Shluzas, in view of U.S. Patent No. 8,617,210 titled "Percutaneous access devices and bone anchor assemblies" to Sicvol, in view of U.S. Patent No. 8,828,060 titled "Element with a shank and a holding element connected to it for connecting to a rod" to Biedermann, in addition to the prior art of record in the '853 Patent prosecution history, as well as various posterior fixation devices publicly available prior to the earliest priority date of the '853 Patent.

193. The '853 Patent fails to comply with the written description, enablement, and definiteness requirements of 35 U.S.C. § 112 in that the asserted claim(s) contain(s) terms that lack

enablement or written description under pre-AIA 35 U.S.C. § 112 ¶ 1.

194.    Choice Spine is entitled to a declaration that one or more asserted claims of the '853 Patent is invalid.

**SEVENTEENTH COUNT**

**(Declaration of Invalidity of U.S. Patent No. 9,808,292)**

195.    Choice Spine restates and incorporates by reference all allegations in this Complaint as if fully set forth herein.

196.    In view of the facts and allegations set forth above, there is an actual, justiciable, substantial, and immediate controversy between Choice Spine and Defendants regarding the validity of the '292 Patent. Absent a declaration of invalidity, Defendants will continue to assert the '292 Patent wrongfully, thereby injuring Choice Spine.

197.    The Claims of the '292 Patent are invalid and unenforceable because one or more claims fail to meet the "conditions of patentability" of 35 U.S.C. §§ 102, 103, and/or 112. Specifically, the claims of the '292 Patent are invalid at least for claiming unpatentable subject matter by being anticipated under 35 U.S.C. § 102, for being obvious under 35 U.S.C. § 103, and/or for failing to comply with the written description, enablement, and/or definiteness requirements of 35 U.S.C. § 112.

198.    The claims are not enabled, lack novelty, are each taught and suggested by the prior art, and are obvious in view of the prior art. For example, the independent claims each recite product features or other similar limitations that would have been obvious in view of, at least, the prior art of record in the patent prosecution history.

199.    By way of non-limiting example, upon information and belief, the claims of the '292 Patent are invalid as obvious under International Patent Application WO2003024343, titled "Spinal osteosynthesis system comprising a support pad" to Vienney, alone or alternatively in view

of U.S. Patent Application Publication No. 2004/0153068 titled "Low profile spinal fixation system" to Janowski, in view of U.S. Patent No. 7,618,444 titled "Surgical instrument for moving a vertebra" to Shluzas, in view of U.S. Patent No. 8,617,210 titled "Percutaneous access devices and bone anchor assemblies" to Sicvol, in view of U.S. Patent No. 8,828,060 titled "Element with a shank and a holding element connected to it for connecting to a rod" to Biedermann, in addition to the prior art of record in the '292 Patent prosecution history, as well as various posterior fixation devices publicly available prior to the earliest priority date of the '292 Patent.

200. The '292 Patent fails to comply with the written description, enablement, and definiteness requirements of 35 U.S.C. § 112 in that at least Claim 1 contains terms that lack enablement or written description under pre-AIA 35 U.S.C. § 112 ¶ 1.

201. Choice Spine is entitled to a declaration that one or more asserted claims of the '292 Patent is invalid.

**EIGHTEENTH COUNT**

**(Declaration of Invalidity of U.S. Patent No. 9,953,006)**

202. Choice Spine restates and incorporates by reference all allegations in this Complaint as if fully set forth herein.

203. In view of the facts and allegations set forth above, there is an actual, justiciable, substantial, and immediate controversy between Choice Spine and Defendants regarding the validity of the '006 Patent. Absent a declaration of invalidity, Defendants will continue to assert the '006 Patent wrongfully, thereby injuring Choice Spine.

204. The Claims of the '006 Patent are invalid and unenforceable because one or more claims fail to meet the "conditions of patentability" of 35 U.S.C. §§ 102, 103, and/or 112. Specifically, the claims of the '006 Patent are invalid at least for claiming unpatentable subject matter by being anticipated under 35 U.S.C. § 102, for being obvious under 35 U.S.C. § 103, and/or

for failing to comply with the written description, enablement, and/or definiteness requirements of 35 U.S.C. § 112.

205.	The claims are not enabled, lack novelty, are each taught and suggested by the prior art, and are obvious in view of the prior art. For example, the independent claims each recite product features or other similar limitations that would have been obvious in view of, at least, the prior art of record in the patent prosecution history.

206.	By way of non-limiting example, upon information and belief, the claims of the '006 Patent are invalid as obvious under International Patent Application WO2003024343, titled "Spinal osteosynthesis system comprising a support pad" to Vienney, alone or alternatively in view of U.S. Patent Application Publication No. 2004/0153068 titled "Low profile spinal fixation system" to Janowski, in view of U.S. Patent No. 7,618,444 titled "Surgical instrument for moving a vertebra" to Shluzas, in view of U.S. Patent No. 8,617,210 titled "Percutaneous access devices and bone anchor assemblies" to Sicvol, in view of U.S. Patent No. 8,828,060 titled "Element with a shank and a holding element connected to it for connecting to a rod" to Biedermann, in addition to the prior art of record in the '006 Patent prosecution history, as well as various posterior fixation devices publicly available prior to the earliest priority date of the '006 Patent.

207.	The '006 Patent fails to comply with the written description, enablement, and definiteness requirements of 35 U.S.C. § 112 in that at least Claim 1 contains terms that lack enablement or written description under pre-AIA 35 U.S.C. § 112 ¶ 1.

208.	Choice Spine is entitled to a declaration that one or more asserted claims of the '006 Patent is invalid.

**NINETEENTH COUNT**

**(Declaration of Invalidity of U.S. Patent No. 9,999,452)**

209.	Choice Spine restates and incorporates by reference all allegations in this

Complaint as if fully set forth herein.

210. In view of the facts and allegations set forth above, there is an actual, justiciable, substantial, and immediate controversy between Choice Spine and Defendants regarding the validity of the '452 Patent. Absent a declaration of invalidity, Defendants will continue to assert the '452 Patent wrongfully, thereby injuring Choice Spine.

211. The Claims of the '452 Patent are invalid and unenforceable because one or more claims fail to meet the "conditions of patentability" of 35 U.S.C. §§ 102, 103, and/or 112. Specifically, the claims of the '452 Patent are invalid at least for claiming unpatentable subject matter by being anticipated under 35 U.S.C. § 102, for being obvious under 35 U.S.C. § 103, and/or for failing to comply with the written description, enablement, and/or definiteness requirements of 35 U.S.C. § 112.

212. The claims are not enabled, lack novelty, are each taught and suggested by the prior art, and are obvious in view of the prior art. For example, the independent claims each recite product features or other similar limitations that would have been obvious in view of, at least, the prior art of record in the patent prosecution history.

213. By way of non-limiting example, upon information and belief, the claims of the '452 Patent are invalid as obvious under International Patent Application WO2003024343, titled "Spinal osteosynthesis system comprising a support pad" to Vienney, alone or alternatively in view of U.S. Patent Application Publication No. 2004/0153068 titled "Low profile spinal fixation system" to Janowski, in view of U.S. Patent No. 7,618,444 titled "Surgical instrument for moving a vertebra" to Shluzas, in view of U.S. Patent No. 8,617,210 titled "Percutaneous access devices and bone anchor assemblies" to Sicvol, in view of U.S. Patent No. 8,828,060 titled "Element with a shank and a holding element connected to it for connecting to a rod" to Biedermann, in addition

to the prior art of record in the '452 Patent prosecution history, as well as various posterior fixation devices publicly available prior to the earliest priority date of the '452 Patent.

214. The '452 Patent fails to comply with the written description, enablement, and definiteness requirements of 35 U.S.C. § 112 in that at least Claim 1 contains terms that lack enablement or written description under pre-AIA 35 U.S.C. § 112 ¶ 1.

215. Choice Spine is entitled to a declaration that one or more asserted claims of the 452 Patent is invalid.

**TWENTIETH COUNT**

**(Declaration of Invalidity of U.S. Patent No. 10,039,577)**

216. Choice Spine restates and incorporates by reference all allegations in this Complaint as if fully set forth herein.

217. In view of the facts and allegations set forth above, there is an actual, justiciable, substantial, and immediate controversy between Choice Spine and Defendants regarding the validity of the '577 Patent. Absent a declaration of invalidity, Defendants will continue to assert the '577 Patent wrongfully, thereby injuring Choice Spine.

218. The Claims of the '577 Patent are invalid and unenforceable because one or more claims fail to meet the "conditions of patentability" of 35 U.S.C. §§ 102, 103, and/or 112. Specifically, the claims of the '577 Patent are invalid at least for claiming unpatentable subject matter by being anticipated under 35 U.S.C. § 102, for being obvious under 35 U.S.C. § 103, and/or for failing to comply with the written description, enablement, and/or definiteness requirements of 35 U.S.C. § 112.

219. The claims are not enabled, lack novelty, are each taught and suggested by the prior art, and are obvious in view of the prior art. For example, the independent claims each recite product features or other similar limitations that would have been obvious in view of, at least, the

prior art of record in the patent prosecution history.

220. By way of non-limiting example, upon information and belief, the claims of the '577 Patent are invalid as obvious under International Patent Application WO2003024343, titled "Spinal osteosynthesis system comprising a support pad" to Vienney, alone or alternatively in view of U.S. Patent Application Publication No. 2004/0153068 titled "Low profile spinal fixation system" to Janowski, in view of U.S. Patent No. 7,618,444 titled "Surgical instrument for moving a vertebra" to Shluzas, in view of U.S. Patent No. 8,617,210 titled "Percutaneous access devices and bone anchor assemblies" to Sicvol, in view of U.S. Patent No. 8,828,060 titled "Element with a shank and a holding element connected to it for connecting to a rod" to Biedermann, in addition to the prior art of record in the '577 Patent prosecution history, as well as various posterior fixation devices publicly available prior to the earliest priority date of the '577 Patent.

221. The '577 Patent fails to comply with the written description, enablement, and definiteness requirements of 35 U.S.C. § 112 in that at least Claim 1 contains terms that lack enablement or written description under pre-AIA 35 U.S.C. § 112 ¶ 1.

222. Choice Spine is entitled to a declaration that one or more asserted claims of the '577 Patent is invalid.

### TWENTY-FIRST COUNT

**(Declaration of Invalidity of U.S. Patent No. 10,245,078)**

223. Choice Spine restates and incorporates by reference all allegations in this Complaint as if fully set forth herein.

224. In view of the facts and allegations set forth above, there is an actual, justiciable, substantial, and immediate controversy between Choice Spine and Defendants regarding the validity of the '078 Patent. Absent a declaration of invalidity, Defendants will continue to assert the '078 Patent wrongfully, thereby injuring Choice Spine.

225. The Claims of the '078 Patent are invalid and unenforceable because one or more claims fail to meet the "conditions of patentability" of 35 U.S.C. §§ 102, 103, and/or 112. Specifically, the claims of the '078 Patent are invalid at least for claiming unpatentable subject matter by being anticipated under 35 U.S.C. § 102, for being obvious under 35 U.S.C. § 103, and/or for failing to comply with the written description, enablement, and/or definiteness requirements of 35 U.S.C. § 112.

226. The claims are not enabled, lack novelty, are each taught and suggested by the prior art, and are obvious in view of the prior art. For example, the independent claims each recite product features or other similar limitations that would have been obvious in view of, at least, the prior art of record in the patent prosecution history.

227. By way of non-limiting example, upon information and belief, the claims of the '078 Patent are invalid as obvious under International Patent Application WO2003024343, titled "Spinal osteosynthesis system comprising a support pad" to Vienney, alone or alternatively in view of U.S. Patent Application Publication No. 2004/0153068 titled "Low profile spinal fixation system" to Janowski, in view of U.S. Patent No. 7,618,444 titled "Surgical instrument for moving a vertebra" to Shluzas, in view of U.S. Patent No. 8,617,210 titled "Percutaneous access devices and bone anchor assemblies" to Sicvol, view of U.S. Patent No. 8,828,060 titled "Element with a shank and a holding element connected to it for connecting to a rod" to Biedermann, in addition to the prior art of record in the '078 Patent prosecution history, as well as various posterior fixation devices publicly available prior to the earliest priority date of the '078 Patent.

228. The '078 Patent fails to comply with the written description, enablement, and definiteness requirements of 35 U.S.C. § 112 in that at least Claim 1 contains terms that lack enablement or written description under pre-AIA 35 U.S.C. § 112 ¶ 1.

229. Choice Spine is entitled to a declaration that one or more asserted claims of the '078 Patent is invalid.

**TWENTY-SECOND COUNT**

**(Declaration of Invalidity of U.S. Patent No. 11,129,646)**

230. Choice Spine states and incorporates by reference all allegations in this Complaint as if fully set forth herein.

231. In view of the facts and allegations set forth above, there is an actual, justiciable, substantial, and immediate controversy between Choice Spine and Defendants regarding the validity of the '646 Patent. Absent a declaration of invalidity, Defendants will continue to assert the '646 Patent wrongfully, thereby injuring Choice Spine.

232. The Claims of the '646 Patent are invalid and unenforceable because one or more claims fail to meet the "conditions of patentability" of 35 U.S.C. §§ 102, 103, and/or 112. Specifically, the claims of the '646 Patent are invalid at least for claiming unpatentable subject matter by being anticipated under 35 U.S.C. § 102, for being obvious under 35 U.S.C. § 103, and/or for failing to comply with the written description, enablement, and/or definiteness requirements of 35 U.S.C. § 112.

233. The claims are not enabled, lack novelty, are each taught and suggested by the prior art, and are obvious in view of the prior art. For example, the independent claims each recite product features or other similar limitations that would have been obvious in view of, at least, the prior art of record in the patent prosecution history.

234. By way of non-limiting example, upon information and belief, the claims of the '646 Patent are invalid as obvious under International Patent Application WO2003024343, titled "Spinal osteosynthesis system comprising a support pad" to Vienney, alone or alternatively in view of U.S. Patent Application Publication No. 2004/0153068 titled "Low profile spinal fixation

system" to Janowski, in view of U.S. Patent No. 7,618,444 titled "Surgical instrument for moving a vertebra" to Shluzas, in view of U.S. Patent No. 8,617,210 titled "Percutaneous access devices and bone anchor assemblies" to Sicvol, in view of U.S. Patent No. 8,828,060 titled "Element with a shank and a holding element connected to it for connecting to a rod" to Biedermann, in addition to the prior art of record in the '646 Patent prosecution history, as well as various posterior fixation devices publicly available prior to the earliest priority date of the '646 Patent.

235. The '646 Patent fails to comply with the written description, enablement, and definiteness requirements of 35 U.S.C. § 112 in that at least Claim 1 contains terms that lack enablement or written description under pre-AIA 35 U.S.C. § 112 ¶ 1.

236. Choice Spine is entitled to a declaration that one or more asserted claims of the '646 Patent is invalid.

**TWENTY-THIRD COUNT**

**(Declaration of Invalidity of U.S. Patent No. 11,399,873)**

237. Choice Spine restates and incorporates by reference all allegations in this Complaint as if fully set forth herein.

238. In view of the facts and allegations set forth above, there is an actual, justiciable, substantial, and immediate controversy between Choice Spine and Defendants regarding the validity of the '873 Patent. Absent a declaration of invalidity, Defendants will continue to assert the '873 Patent wrongfully, thereby injuring Choice Spine. Indeed, Defendants have continued to frivolously and in bad faith assert the '873 Patent without any basis in law or fact, despite the disclaimer of all its claims.

239. The Claims of the '873 Patent are invalid and unenforceable because one or more claims fail to meet the "conditions of patentability" of 35 U.S.C. §§ 102, 103, and/or 112. Specifically, the claims of the '095 Patent are invalid at least for claiming unpatentable subject

matter by being anticipated under 35 U.S.C. § 102, for being obvious under 35 U.S.C. § 103, and/or for failing to comply with the written description, enablement, and/or definiteness requirements of 35 U.S.C. § 112.

240. On July 18, 2025, in response to an Inter-Partes Review petition filed by Seaspine Holdings Corp. (IPR2025-00773), Dr. Jackson, acting through the Polsinelli Defendants, disclaimed all claims of the '873 Patent. As a result of this disclaimer, the '873 Patent has no valid or enforceable claims.

241. By way of non-limiting example, upon information and belief, the claims of the '873 Patent are invalid as obvious under International Patent Application WO2003024343, titled "Spinal osteosynthesis system comprising a support pad" to Vienney, alone or alternatively in view of U.S. Patent Application Publication No. 2004/0153068 titled "Low profile spinal fixation system" to Janowski, in view of U.S. Patent No. 7,618,444 titled "Surgical instrument for moving a vertebra" to Shluzas, in view of U.S. Patent No. 8,617,210 titled "Percutaneous access devices and bone anchor assemblies" to Sicvol, in view of U.S. Patent No. 8,828,060 titled "Element with a shank and a holding element connected to it for connecting to a rod" to Biedermann, in addition to the prior art of record in the '873 Patent prosecution history, as well as various posterior fixation devices publicly available prior to the earliest priority date of the '873 Patent.

242. Additionally, the asserted claims are anticipated by and/or would have been obvious in view of prior art including, for example, the prior art of record in the '873 Patent prosecution history, as well as various posterior fixation devices publicly available prior to the earliest priority date of the '873 Patent.

243. The '8735 Patent fails to comply with the written description, enablement, and definiteness requirements of 35 U.S.C. § 112 in that at least Claim 1 contains terms that lack

enablement or written description under pre-AIA 35 U.S.C. § 112 ¶ 1.

244. Choice Spine is entitled to a declaration that one or more asserted claims of the '873 Patent is invalid.

## TWENTY-FOURTH COUNT

### (Declaration of Invalidity of U.S. Patent No. 11,419,638)

245. Choice Spine restates and incorporates by reference all allegations in this Complaint as if fully set forth herein.

246. In view of the facts and allegations set forth above, there is an actual, justiciable, substantial, and immediate controversy between Choice Spine and Defendants regarding the validity of the '638 Patent. Absent a declaration of invalidity, Defendants will continue to assert the '638 Patent wrongfully, thereby injuring Choice Spine.

247. The Claims of the '638 Patent are invalid and unenforceable because one or more claims fail to meet the "conditions of patentability" of 35 U.S.C. §§ 102, 103, and/or 112. Specifically, the claims of the '638 Patent are invalid at least for claiming unpatentable subject matter by being anticipated under 35 U.S.C. § 102, for being obvious under 35 U.S.C. § 103, and/or for failing to comply with the written description, enablement, and/or definiteness requirements of 35 U.S.C. § 112.

248. The claims are not enabled, lack novelty, are each taught and suggested by the prior art, and are obvious in view of the prior art. For example, the independent claims each recite product features or other similar limitations that would have been obvious in view of, at least, the prior art of record in the patent prosecution history.

249. By way of non-limiting example, upon information and belief, the claims of the '638 Patent are invalid as obvious under International Patent Application WO2003024343, titled "Spinal osteosynthesis system comprising a support pad" to Vienney, alone or alternatively in view

of U.S. Patent Application Publication No. 2004/0153068 titled "Low profile spinal fixation system" to Janowski, in view of U.S. Patent No. 7,618,444 titled "Surgical instrument for moving a vertebra" to Shluzas, in view of U.S. Patent No. 8,617,210 titled "Percutaneous access devices and bone anchor assemblies" to Sicvol, in view of U.S. Patent No. 8,828,060 titled "Element with a shank and a holding element connected to it for connecting to a rod" to Biedermann, in addition to the prior art of record in the '638 Patent prosecution history, as well as various posterior fixation devices publicly available prior to the earliest priority date of the '638 Patent.

250. The '638 Patent fails to comply with the written description, enablement, and definiteness requirements of 35 U.S.C. § 112 in that at least Claim 1 contains terms that lack enablement or written description under pre-AIA 35 U.S.C. § 112 ¶ 1.

251. Choice Spine is entitled to a declaration that one or more asserted claims of the '638 Patent is invalid.

**TWENTY-FIFTH COUNT**

**(Declaration of Invalidity of U.S. Patent No. 11,464,548)**

252. Choice Spine restates and incorporates by reference all allegations in this Complaint as if fully set forth herein.

253. In view of the facts and allegations set forth above, there is an actual, justiciable, substantial, and immediate controversy between Choice Spine and Defendants regarding the validity of the '548 Patent. Absent a declaration of invalidity, Defendants will continue to assert the '548 Patent wrongfully, thereby injuring Choice Spine.

254. The Claims of the '548 Patent are invalid and unenforceable because one or more claims fail to meet the "conditions of patentability" of 35 U.S.C. §§ 102, 103, and/or 112. Specifically, the claims of the '352 Patent are invalid at least for claiming unpatentable subject matter by being anticipated under 35 U.S.C. § 102, for being obvious under 35 U.S.C. § 103, and/or

for failing to comply with the written description, enablement, and/or definiteness requirements of 35 U.S.C. § 112.

255. The claims are not enabled, lack novelty, are each taught and suggested by the prior art, and are obvious in view of the prior art. For example, the independent claims each recite product features or other similar limitations that would have been obvious in view of, at least, the prior art of record in the patent prosecution history.

256. By way of non-limiting example, upon information and belief, the claims of the '548 Patent are invalid as obvious under International Patent Application WO2003024343, titled "Spinal osteosynthesis system comprising a support pad" to Vienney, alone or alternatively in view of U.S. Patent Application Publication No. 2004/0153068 titled "Low profile spinal fixation system" to Janowski, in view of U.S. Patent No. 7,618,444 titled "Surgical instrument for moving a vertebra" to Shluzas, in view of U.S. Patent No. 8,617,210 titled "Percutaneous access devices and bone anchor assemblies" to Sicvol, in view of U.S. Patent No. 8,828,060 titled "Element with a shank and a holding element connected to it for connecting to a rod" to Biedermann, in addition to the prior art of record in the '548 Patent prosecution history, as well as various posterior fixation devices publicly available prior to the earliest priority date of the '548 Patent.

257. The '548 Patent fails to comply with the written description, enablement, and definiteness requirements of 35 U.S.C. § 112 in that at least Claim 1 contains terms that lack enablement or written description under pre-AIA 35 U.S.C. § 112 ¶ 1.

258. Choice Spine is entitled to a declaration that one or more asserted claims of the '548 Patent is invalid.

**TWENTY-SIXTH COUNT**

**(Declaration of Invalidity of U.S. Patent No. 11,849,977)**

259. Choice Spine restates and incorporates by reference all allegations in this

Complaint as if fully set forth herein.

260. In view of the facts and allegations set forth above, there is an actual, justiciable, substantial, and immediate controversy between Choice Spine and Defendants regarding the validity of the '977 Patent. Absent a declaration of invalidity, Defendants will continue to assert the '977 Patent wrongfully, thereby injuring Choice Spine.

261. The Claims of the '977 Patent are invalid and unenforceable because one or more claims fail to meet the "conditions of patentability" of 35 U.S.C. §§ 102, 103, and/or 112. Specifically, the claims of the '977 Patent are invalid at least for claiming unpatentable subject matter by being anticipated under 35 U.S.C. § 102, for being obvious under 35 U.S.C. § 103, and/or for failing to comply with the written description, enablement, and/or definiteness requirements of 35 U.S.C. § 112.

262. The claims are not enabled, lack novelty, are each taught and suggested by the prior art, and are obvious in view of the prior art. For example, the independent claims each recite product features or other similar limitations that would have been obvious in view of, at least, the prior art of record in the patent prosecution history.

263. By way of non-limiting example, upon information and belief, the claims of the '977 Patent are invalid as obvious under International Patent Application WO2003024343, titled "Spinal osteosynthesis system comprising a support pad" to Vienney, alone or alternatively in view of U.S. Patent Application Publication No. 2004/0153068 titled "Low profile spinal fixation system" to Janowski, in view of U.S. Patent No. 7,618,444 titled "Surgical instrument for moving a vertebra" to Shluzas, in view of U.S. Patent No. 8,617,210 titled "Percutaneous access devices and bone anchor assemblies" to Sicvol, view of U.S. Patent No. 8,828,060 titled "Element with a shank and a holding element connected to it for connecting to a rod" to Biedermann, in addition

to the prior art of record in the '977 Patent prosecution history, as well as various posterior fixation devices publicly available prior to the earliest priority date of the '977 Patent.

264. The '977 Patent fails to comply with the written description, enablement, and definiteness requirements of 35 U.S.C. § 112 in that at least Claim 1 contains terms that lack enablement or written description under pre-AIA 35 U.S.C. § 112 ¶ 1.

265. Choice Spine is entitled to a declaration that one or more asserted claims of the '977 Patent is invalid.

### TWENTY-SEVENTH COUNT

### (Declaration of Invalidity of U.S. Patent No. 11,925,392)

266. Choice Spine restates and incorporates by reference all allegations in this Complaint as if fully set forth herein.

267. In view of the facts and allegations set forth above, there is an actual, justiciable, substantial, and immediate controversy between Choice Spine and Defendants regarding the validity of the '392 Patent. Absent a declaration of invalidity, Defendants will continue to assert the '392 Patent wrongfully, thereby injuring Choice Spine.

268. The Claims of the '392 Patent are invalid and unenforceable because one or more claims fail to meet the "conditions of patentability" of 35 U.S.C. §§ 102, 103, and/or 112. Specifically, the claims of the '392 Patent are invalid at least for claiming unpatentable subject matter by being anticipated under 35 U.S.C. § 102, for being obvious under 35 U.S.C. § 103, and/or for failing to comply with the written description, enablement, and/or definiteness requirements of 35 U.S.C. § 112.

269. The claims are not enabled, lack novelty, are each taught and suggested by the prior art, and are obvious in view of the prior art. For example, the independent claims each recite product features or other similar limitations that would have been obvious in view of, at least, the

prior art of record in the patent prosecution history.

270. By way of non-limiting example, upon information and belief, the claims of the '392 Patent are invalid as obvious under International Patent Application WO2003024343, titled "Spinal osteosynthesis system comprising a support pad" to Vienney, alone or alternatively in view of U.S. Patent Application Publication No. 2004/0153068 titled "Low profile spinal fixation system" to Janowski, in view of U.S. Patent No. 7,618,444 titled "Surgical instrument for moving a vertebra" to Shluzas, in view of U.S. Patent No. 8,617,210 titled "Percutaneous access devices and bone anchor assemblies" to Sicvol, in view of U.S. Patent No. 8,828,060 titled "Element with a shank and a holding element connected to it for connecting to a rod" to Biedermann, in addition to the prior art of record in the '392 Patent prosecution history, as well as various posterior fixation devices publicly available prior to the earliest priority date of the '392 Patent.

271. The '392 Patent fails to comply with the written description, enablement, and definiteness requirements of 35 U.S.C. § 112 in that at least Claim 1 contains terms that lack enablement or written description under pre-AIA 35 U.S.C. § 112 ¶ 1.

272. Choice Spine is entitled to a declaration that one or more asserted claims of the '392 Patent is invalid.

## TWENTY-EIGHTH COUNT

### (Declaration of Invalidity of U.S. Patent No. 11,931,080)

273. Choice Spine restates and incorporates by reference all allegations in this Complaint as if fully set forth herein.

274. In view of the facts and allegations set forth above, there is an actual, justiciable, substantial, and immediate controversy between Choice Spine and Defendants regarding the validity of the '080 Patent. Absent a declaration of invalidity, Defendants will continue to assert the '080 Patent wrongfully, thereby injuring Choice Spine.

275. The Claims of the '080 Patent are invalid and unenforceable because one or more claims fail to meet the "conditions of patentability" of 35 U.S.C. §§ 102, 103, and/or 112. Specifically, the claims of the '080 Patent are invalid at least for claiming unpatentable subject matter by being anticipated under 35 U.S.C. § 102, for being obvious under 35 U.S.C. § 103, and/or for failing to comply with the written description, enablement, and/or definiteness requirements of 35 U.S.C. § 112.

276. The claims are not enabled, lack novelty, are each taught and suggested by the prior art, and are obvious in view of the prior art. For example, the independent claims each recite product features or other similar limitations that would have been obvious in view of, at least, the prior art of record in the patent prosecution history.

277. By way of non-limiting example, upon information and belief, the claims of the '080 Patent are invalid as obvious under International Patent Application WO2003024343, titled "Spinal osteosynthesis system comprising a support pad" to Vienney, alone or alternatively in view of U.S. Patent Application Publication No. 2004/0153068 titled "Low profile spinal fixation system" to Janowski, in view of U.S. Patent No. 7,618,444 titled "Surgical instrument for moving a vertebra" to Shluzas, in view of U.S. Patent No. 8,617,210 titled "Percutaneous access devices and bone anchor assemblies" to Sicvol, in view of U.S. Patent No. 8,828,060 titled "Element with a shank and a holding element connected to it for connecting to a rod" to Biedermann, in addition to the prior art of record in the '080 Patent prosecution history, as well as various posterior fixation devices publicly available prior to the earliest priority date of the '080 Patent.

278. The '080 Patent fails to comply with the written description, enablement, and definiteness requirements of 35 U.S.C. § 112 in that at least Claim 1 contains terms that lack enablement or written description under pre-AIA 35 U.S.C. § 112 ¶ 1.

279. Choice Spine is entitled to a declaration that one or more asserted claims of the '080 Patent is invalid.

## TWENTY-NINTH-SEVENTH COUNT

**(Violation of the Tennessee Frivolous or Bad Faith Assertion of Patent Infringement Act)**

280. Choice Spine restates and incorporates by reference all allegations in this Complaint as if fully set forth herein.

281. Defendants' repeated assertions of patent infringement and licensing demands against Choice Spine—as demonstrated in the Demand Letter, the subsequent letters from Defendants, the numerous deficient claim charts, and through the Parties' email correspondence—are both objectively baseless and subjectively made in bad faith.

282. For example, as evidenced by the Demand Letter itself and the limited, delayed claim charts, Defendants failed to conduct a reasonable comparison of the claims of the Asserted Patents to each of the accused Choice Spine products. Any reasonable investigation would have revealed that Choice Spine's products do not infringe any valid and enforceable claim of the Asserted Patents. Yet Defendants have continued to assert their meritless claims of infringement despite Choice Spine's explanations of non-infringement and invalidity.

283. Additionally, Defendants' frivolous infringement claim and bad faith violation of TN Code § 29-10-102(a)(3)(B) is further evidenced by their asserting the '873 Patent against Choice Spine on March 3, 2026 through an electronic communication, despite knowing that they disclaimed all claims of the '873 Patent more than seven months earlier. Specifically, on July 18, 2025, in response to an Inter-Partes Review petition filed by Seaspine Holdings Corp. (IPR2025-00773), Dr. Jackson, acting through the Polsinelli Defendants, disclaimed all claims of the '873 Patent in an unappealed administrative decision. Defendants' assertion of a patent with no valid or enforceable claims demonstrates that Defendants' infringement allegations are frivolous and not

the product of any good-faith analysis but rather part of a deliberate campaign to pressure Choice Spine into paying unwarranted licensing fees.

284. Defendants' conduct, including their sending of the Demand Letter, subsequent letters, and participating in threatening Choice Spine with objectively baseless patent litigation constitutes abusive patent assertion in violation of the BFAPIA. *See* TN Code § 29-10-102 *et seq*.

285. Defendants' course of conduct to date, as reflected in the Demand Letter, subsequent communications, and repeated licensing demands for a portfolio of now three-hundred and one (301) patents—despite asserting only fourteen (14) patents against Choice Spine —further demonstrates a pattern of bad-faith enforcement efforts designed to extract unwarranted payments rather than to legitimately enforce valid patent rights. *See* TN Code § 29-10-102 *et seq*.

286. As a result of Defendants' objectively baseless and subjectively bad-faith and abusive assertions that Choice Spine's products infringe the Asserted Patents, Choice Spine has suffered and continues to suffer damages and incur costs, fees (including attorneys' fees), and other harm, all of which are recoverable under the Tennessee Bad Faith Assertion of Patent Infringement Act. *See* TN Code § 29-10-102 *et seq*.

287. In particular, by a result of the nearly two-year long campaign of bad faith acts discussed above without any filing of suit, Choice Spine has been forced to divert resources to research, review, and investigate Defendants' claims, as well as correspond with attorneys and Defendants to respond to these baseless claims. These diversions by Defendants fall squarely on Defendants' bad acts and have caused a significant burden on and damages to Choice Spine.

288. Choice Spine seeks both equitable relief enjoining Defendants from continuing to assert the Asserted Patents or any other Jackson Patents listed in the Draft License Agreement sent by Defendants, **Exhibit 17**, against Choice Spine, its customers, or its products as well as recovery

of its damages, costs, and fees under TN Code § 29-10-104 and 35 U.S.C. § 285, together with an award of exemplary damages in an amount equal to three (3) times the total of actual damages. *See* TN Code§ 29-10-104(2).

## THIRTIETH COUNT

**(Declaratory Judgment of Unenforceability due to Patent Misuse – Patent No. 11,399,873)**

289. Choice Spine incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

290. An actual and justiciable controversy exists between the parties concerning the enforceability of U.S. Patent No. 11,399,873.

291. On July 18, 2025, Defendants disclaimed all claims of the '873 Patent in connection with Inter-Partes Review proceedings before the United States Patent and Trademark Office (IPR2025-00773). Defendants did not appeal this administrative decision.

292. Despite having disclaimed all claims of the '873 Patent, Defendants thereafter asserted the '873 Patent against Choice Spine in correspondence dated March 3, 2026—the first time Defendants had asserted this patent against Choice Spine.

293. At the time of the March 3, 2026 assertion, Defendants had actual knowledge that all claims of the '873 Patent had been disclaimed months earlier and that no valid, enforceable claims remained.

294. By knowingly asserting a patent with no valid claims for the purpose of extracting licensing fees, coercing a settlement, or otherwise leveraging the threat of patent litigation, Defendants have engaged in patent misuse.

295. Defendants' conduct in asserting the '873 Patent after disclaiming all of its claims constitutes an improper attempt to extend the patent grant beyond its lawful scope and to wield the threat of patent enforcement as a tool for extracting value to which Defendants are not entitled.

296. As a result of Defendants' misuse, the '873 Patent is unenforceable.

297. Choice Spine is entitled to a declaratory judgment that the '873 Patent is unenforceable due to Defendants' patent misuse.

**PRAYER FOR RELIEF**

WHEREFORE, Choice Spine prays for judgment and relief as follows:

A. Declaring that Choice Spine's posterior fixation devices including, but not limited to, the (1) Lancer, (2) Thunderbolt MIS, (3) Thunderbolt EXTAB, (4) Blackbird, and (5) Proliant do not infringe directly or indirectly any valid claims of the '689 Patent and enjoining Defendants, their officers, agents, employees, attorneys, and all persons in active concert or participation with them, from directly or indirectly charging infringement, or instituting further action for infringement, of the '689 Patent against Choice Spine;

B. Declaring that Choice Spine's posterior fixation devices including, but not limited to, the (1) Lancer, (2) Thunderbolt MIS, (3) Thunderbolt EXTAB, (4) Blackbird, and (5) Proliant do not infringe directly or indirectly any valid claims of the '853 Patent and enjoining Defendants, their officers, agents, employees, attorneys, and all persons in active concert or participation with them, from directly or indirectly charging infringement, or instituting further action for infringement, of the '853 Patent against Choice Spine;

C. Declaring that Choice Spine's posterior fixation devices including, but not limited to, the (1) Lancer, (2) Thunderbolt MIS, (3) Thunderbolt EXTAB, (4) Blackbird, and (5) Proliant do not infringe directly or indirectly any valid claims of the '292 Patent and enjoining Defendants, their officers, agents, employees, attorneys, and all persons in active concert or participation with them, from directly or indirectly charging infringement, or instituting further action for infringement, of the '292 Patent against Choice Spine;

D.    Declaring that Choice Spine's posterior fixation devices including, but not limited to, the (1) Lancer, (2) Thunderbolt MIS, (3) Thunderbolt EXTAB, (4) Blackbird, and (5) Proliant do not infringe directly or indirectly any valid claims of the '006 Patent and enjoining Defendants, their officers, agents, employees, attorneys, and all persons in active concert or participation with them, from directly or indirectly charging infringement, or instituting further action for infringement, of the '006 Patent against Choice Spine;

E.    Declaring that Choice Spine's posterior fixation devices including, but not limited to, the (1) Lancer, (2) Thunderbolt MIS, (3) Thunderbolt EXTAB, (4) Blackbird, and (5) Proliant do not infringe directly or indirectly any valid claims of the '452 Patent and enjoining Defendants, their officers, agents, employees, attorneys, and all persons in active concert or participation with them, from directly or indirectly charging infringement, or instituting further action for infringement, of the '452 Patent against Choice Spine;

F.    Declaring that Choice Spine's posterior fixation devices including, but not limited to, the (1) Lancer, (2) Thunderbolt MIS, (3) Thunderbolt EXTAB, (4) Blackbird, and (5) Proliant do not infringe directly or indirectly any valid claims of the '577 Patent and enjoining Defendants, their officers, agents, employees, attorneys, and all persons in active concert or participation with them, from directly or indirectly charging infringement, or instituting further action for infringement, of the '577 Patent against Choice Spine;

G.    Declaring that Choice Spine's posterior fixation devices including, but not limited to, the (1) Lancer, (2) Thunderbolt MIS, (3) Thunderbolt EXTAB, (4) Blackbird, and (5) Proliant do not infringe directly or indirectly any valid claims of the '078 Patent and enjoining Defendants, their officers, agents, employees, attorneys, and all persons in active concert or participation with

them, from directly or indirectly charging infringement, or instituting further action for infringement, of the '078 Patent against Choice Spine;

H. Declaring that Choice Spine's posterior fixation devices including, but not limited to, the (1) Lancer, (2) Thunderbolt MIS, (3) Thunderbolt EXTAB, (4) Blackbird, and (5) Proliant do not infringe directly or indirectly any valid claims of the '646 Patent and enjoining Defendants, their officers, agents, employees, attorneys, and all persons in active concert or participation with them, from directly or indirectly charging infringement, or instituting further action for infringement, of the '646 Patent against Choice Spine;

I. Declaring that Choice Spine's posterior fixation devices including, but not limited to, the (1) Lancer, (2) Thunderbolt MIS, (3) Thunderbolt EXTAB, (4) Blackbird, and (5) Proliant do not infringe directly or indirectly any valid claims of the '873 Patent and enjoining Defendants, their officers, agents, employees, attorneys, and all persons in active concert or participation with them, from directly or indirectly charging infringement, or instituting further action for infringement, of the '873 Patent against Choice Spine;

J. Declaring that Choice Spine's posterior fixation devices including, but not limited to, the (1) Lancer, (2) Thunderbolt MIS, (3) Thunderbolt EXTAB, (4) Blackbird, and (5) Proliant do not infringe directly or indirectly any valid claims of the '638 Patent and enjoining Defendants, their officers, agents, employees, attorneys, and all persons in active concert or participation with them, from directly or indirectly charging infringement, or instituting further action for infringement, of the '638 Patent against Choice Spine;

K. Declaring that Choice Spine's posterior fixation devices including, but not limited to, the (1) Lancer, (2) Thunderbolt MIS, (3) Thunderbolt EXTAB, (4) Blackbird, and (5) Proliant do not infringe directly or indirectly any valid claims of the '548 Patent and enjoining Defendants,

their officers, agents, employees, attorneys, and all persons in active concert or participation with them, from directly or indirectly charging infringement, or instituting further action for infringement, of the '548 Patent against Choice Spine;

L. Declaring that Choice Spine's posterior fixation devices including, but not limited to, the (1) Lancer, (2) Thunderbolt MIS, (3) Thunderbolt EXTAB, (4) Blackbird, and (5) Proliant do not infringe directly or indirectly any valid claims of the '977 Patent and enjoining Defendants, their officers, agents, employees, attorneys, and all persons in active concert or participation with them, from directly or indirectly charging infringement, or instituting further action for infringement, of the '977 Patent against Choice Spine;

M. Declaring that Choice Spine's posterior fixation devices including, but not limited to, the (1) Lancer, (2) Thunderbolt MIS, (3) Thunderbolt EXTAB, (4) Blackbird, and (5) Proliant do not infringe directly or indirectly any valid claims of the '393 Patent and enjoining Defendants, their officers, agents, employees, attorneys, and all persons in active concert or participation with them, from directly or indirectly charging infringement, or instituting further action for infringement, of the '392 Patent against Choice Spine;

N. Declaring that Choice Spine's posterior fixation devices including, but not limited to, the (1) Lancer, (2) Thunderbolt MIS, (3) Thunderbolt EXTAB, (4) Blackbird, and (5) Proliant do not infringe directly or indirectly any valid claims of the '080 Patent and enjoining Defendants, their officers, agents, employees, attorneys, and all persons in active concert or participation with them, from directly or indirectly charging infringement, or instituting further action for infringement, of the '080 Patent against Choice Spine;

O. Declaring that the '689 Patent is invalid under one or more provisions of Title 35 of the United States Code including, but not limited to, 35 U.S.C. §§ 101, 102, 103, and/or 112,

and enjoining Defendants, their officers, agents, employees, attorneys, and all persons in active concert or participation with them, from asserting or enforcing the '689 Patent against Choice Spine, including by charging infringement or instituting any action for infringement based on the '689 Patent;

P.       Declaring that the '853 Patent is invalid under one or more provisions of Title 35 of the United States Code including, but not limited to, 35 U.S.C. §§ 101, 102, 103, and/or 112, and enjoining Defendants, their officers, agents, employees, attorneys, and all persons in active concert or participation with them, from asserting or enforcing the '853 Patent against Choice Spine, including by charging infringement or instituting any action for infringement based on the '853 Patent;

Q.       Declaring that the '292 Patent is invalid under one or more provisions of Title 35 of the United States Code including, but not limited to, 35 U.S.C. §§ 101, 102, 103, and/or 112, and enjoining Defendants, their officers, agents, employees, attorneys, and all persons in active concert or participation with them, from asserting or enforcing the '292 Patent against Choice Spine, including by charging infringement or instituting any action for infringement based on the '292 Patent;

R.       Declaring that the '006 Patent is invalid under one or more provisions of Title 35 of the United States Code including, but not limited to, 35 U.S.C. §§ 101, 102, 103, and/or 112, and enjoining Defendants, their officers, agents, employees, attorneys, and all persons in active concert or participation with them, from asserting or enforcing the '006 Patent against Choice Spine, including by charging infringement or instituting any action for infringement based on the '006 Patent;

S.      Declaring that the '452 Patent is invalid under one or more provisions of Title 35 of the United States Code including, but not limited to, 35 U.S.C. §§ 101, 102, 103, and/or 112, and enjoining Defendants, their officers, agents, employees, attorneys, and all persons in active concert or participation with them, from asserting or enforcing the '452 Patent against Choice Spine, including by charging infringement or instituting any action for infringement based on the '452 Patent;

T.      Declaring that the '577 Patent is invalid under one or more provisions of Title 35 of the United States Code including, but not limited to, 35 U.S.C. §§ 101, 102, 103, and/or 112, and enjoining Defendants, their officers, agents, employees, attorneys, and all persons in active concert or participation with them, from asserting or enforcing the '577 Patent against Choice Spine, including by charging infringement or instituting any action for infringement based on the '577 Patent;

U.      Declaring that the '078 Patent is invalid under one or more provisions of Title 35 of the United States Code including, but not limited to, 35 U.S.C. §§ 101, 102, 103, and/or 112, and enjoining Defendants, their officers, agents, employees, attorneys, and all persons in active concert or participation with them, from asserting or enforcing the '078 Patent against Choice Spine, including by charging infringement or instituting any action for infringement based on the '078 Patent;

V.      Declaring that the '646 Patent is invalid under one or more provisions of Title 35 of the United States Code including, but not limited to, 35 U.S.C. §§ 101, 102, 103, and/or 112, and enjoining Defendants, their officers, agents, employees, attorneys, and all persons in active concert or participation with them, from asserting or enforcing the '646 Patent against Choice

70

Spine, including by charging infringement or instituting any action for infringement based on the '646 Patent;

W.      Declaring that the '873 Patent is invalid under one or more provisions of Title 35 of the United States Code including, but not limited to, 35 U.S.C. §§ 101, 102, 103, and/or 112, and enjoining Defendants, their officers, agents, employees, attorneys, and all persons in active concert or participation with them, from asserting or enforcing the '873 Patent against Choice Spine, including by charging infringement or instituting any action for infringement based on the '873 Patent;

X.      Declaring that the '638 Patent is invalid under one or more provisions of Title 35 of the United States Code including, but not limited to, 35 U.S.C. §§ 101, 102, 103, and/or 112, and enjoining Defendants, their officers, agents, employees, attorneys, and all persons in active concert or participation with them, from asserting or enforcing the '638 Patent against Choice Spine, including by charging infringement or instituting any action for infringement based on the '638 Patent;

Y.      Declaring that the '548 Patent is invalid under one or more provisions of Title 35 of the United States Code including, but not limited to, 35 U.S.C. §§ 101, 102, 103, and/or 112, and enjoining Defendants, their officers, agents, employees, attorneys, and all persons in active concert or participation with them, from asserting or enforcing the '548 Patent against Choice Spine, including by charging infringement or instituting any action for infringement based on the '548 Patent;

Z.      Declaring that the '977 Patent is invalid under one or more provisions of Title 35 of the United States Code including, but not limited to, 35 U.S.C. §§ 101, 102, 103, and/or 112, and enjoining Defendants, their officers, agents, employees, attorneys, and all persons in active

concert or participation with them, from asserting or enforcing the '977 Patent against Choice Spine, including by charging infringement or instituting any action for infringement based on the '977 Patent;

AA. Declaring that the '392 Patent is invalid under one or more provisions of Title 35 of the United States Code including, but not limited to, 35 U.S.C. §§ 101, 102, 103, and/or 112, and enjoining Defendants, their officers, agents, employees, attorneys, and all persons in active concert or participation with them, from asserting or enforcing the '392 Patent against Choice Spine, including by charging infringement or instituting any action for infringement based on the '392 Patent;

BB. Declaring that the '080 Patent is invalid under one or more provisions of Title 35 of the United States Code including, but not limited to, 35 U.S.C. §§ 101, 102, 103, and/or 112, and enjoining Defendants, their officers, agents, employees, attorneys, and all persons in active concert or participation with them, from asserting or enforcing the '080 Patent against Choice Spine, including by charging infringement or instituting any action for infringement based on the '080 Patent;

CC. Declaring that U.S. Patent No. 11,399,873 is unenforceable due to Defendants' patent misuse'

DD. An order enjoining Defendants from asserting any of the Jackson Patents against Choice Spine;

EE. Finding that this is an exceptional case under 35 U.S.C. § 285;

FF. Awarding Choice Spine its costs and attorneys' fees in connection with this action;

GG. An order finding Defendants' conduct to be in violation of the Tennessee Bad Faith Assertion of Patent Infringement Act (TN Code § 29-10-102 *et seq.*) and awarding to Choice Spine

all remedies contemplated by the BFAPIA including, but not limited to, exemplary damages in an amount equal to three (3) times the total of all damages, costs, expenses, and fees (including attorneys' fees) incurred by Choice Spine as a result of Defendants' bad-faith assertion of patent infringement, together with all pre-judgment interest and post-judgment interest as provided by law, as well as equitable relief to estop Defendants from asserting the Asserted Patents or any of the Jackson Patents against Choice Spine; and

HH.    Such further and additional relief as the Court deems just and proper.

## JURY DEMAND

Choice Spine demands a jury trial on all issues and claims so triable.

April 15, 2026          Respectfully  submitted,

**CHOICE SPINE, LLC**

BY:*/s/  Reuben N. Pelot, IV*_____
    Allison S. Jackson, Esq., TN BPR#029230
    Reuben N. Pelot IV, Esq., TN BPR#014986
    Davis M. Capps, Esq. TN BPR#042478
    EGERTON, MCAFEE, ARMISTEAD & DAVIS, P.C.
    900 S. Gay Street, Suite 1400
    Knoxville, Tennessee
    Tel: 865.546.0500
    ajackson@emlaw.com
    rpelot@emlaw.com
    dcapps@emlaw.com


BY:*/s/  Richard T. Matthews*_____
    Richard T. Matthews (pro hac vice pending)
    N.C. State Bar #32817
    Jenny J. Wang (pro hac vice pending)
    N.C. State Bar #61255
    Aaron T. Fadden  (pro hac vice pending)
    N.C. State Bar #59495
    WILLIAMS MULLEN
    P.O. Box 1000
    Raleigh, NC 27602-1000
    Telephone: (919) 981-4070
    Facsimile: (919) 981-4300
    rmatthews@williamsmullen.com
    jwang@williamsmullen.com
    afadden@williamsmullen.com

    *Attorneys for Plaintiff*